*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re Guardianship of LEONARD DEAR.

MISSY KAISERLIAN, Guardian of LEONARD
DEAR, a legally protected person, and DAVID H.
KINSMAN, Guardian Ad Litem of LEONARD
DEAR,

UNPUBLISHED
January 17, 2019

Appellees,

v

No. 340192
Kent Probate Court
LC No. 17-201425-GA

LENORA DEAR,

Appellant.

Before: MARKEY, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Appellant, Lenora Dear, appeals as of right the probate court's order appointing a public guardian to oversee the care, custody, and control of Lenora's brother, Leonard Dear, an incapacitated individual. Because the trial court failed to afford Leona due process in connection with the guardianship proceedings, we reverse and remand for further proceedings.

## I. BASIC FACTS

On June 12, 2017, a medical social worker filed a petition for the appointment of a guardian for Leonard. On June 16, 2017, the court held a hearing on the petition and took testimony from Leonard's guardian ad litem. The court also heard from James Dear, Leonard's brother, and Lenora, both of whom sought appointment as Leonard's guardian. The court instructed both to file the appropriate paperwork. The court then found that Leonard was incapacitated and it was appropriate to appoint a guardian. The court, therefore, appointed Missy Kaiserlian, a professional guardian, as Leonard's temporary guardian.

On July 14, 2017, Lenora filed an "objection" to the appointment of Kaiserlian and asked the court to instead appoint her as Leonard's guardian. In her objection, Lenora detailed the

reasons she felt she would be suitable to serve as Leonard's guardian, including that she had experience and training in caring for adults with disabilities, that she had a work history in social work, that she had good morals and values, that she was willing to change her life plans and future goals to care for Leonard, and that she wanted to keep him around his family. Lenora also voiced concerns with how Kaiserlian was carrying out her duties as temporary guardian, noting that Kaiserlian had difficulty communicating with Leonard's family and was not fully informed about Leonard's medical status and physical needs.[1]

A contested hearing was held on September 1, 2017. At that time, petitioner presented testimony from the GAL, who generally testified that Leonard's family was uncooperative. He explained:

> I believe that the family is probably somewhat distrustful of maybe hospital and facility staff, court staff, that kind of—they just don't—they're not forthcoming with, for example, with [Lenora] it took three conversations to finally get her address and phone number. Each time when I asked, and same thing with James, just after court I asked, "Could I have people's names and phone numbers?" [And the response was,] "We already provided that to the hospital at some point."

The GAL added that he would leave messages with the family that would not be returned. With respect to Lenora, the GAL testified that he had spoken with her several times and that in one of the conversations:

> she talked about her past experience in her profession and nurse's aide and things that she's done where she would be very capable of doing this, and she's willing to take on that responsibility. She's willing to take him into her home, if that's appropriate. However, I have to say, Mrs. Dear has been extremely difficult to work with. On three separate occasions when I asked for her address and phone number she indicated she had already provided that to the hospital, and so she was not going to give it to me. Finally in our last conversation she did give me her address and phone number.

Ultimately, the GAL opined that "[d]ue to the difficulty working with this family, the hospital and the facility he is presently at and his current temporary guardian, as well as this writer, have a hard time believing it is in the ward's best interest to appoint a family member." He did note, however, that "other than [Lenora's] unwillingness to work with somebody and provide information and not be difficult, other than that, she would probably be an appropriate choice."

---

[1] On August 3, 2017, James also filed a handwritten letter requesting that he be appointed as Leonard's guardian. The court ultimately denied his request, finding that he was not suitable to serve as a guardian based on his criminal history and his lack of cooperation with the GAL and the temporary guardian. James has not appealed that decision.

Petitioner then called James as a witness and questioned him regarding Leonard's finances before stating that it did not have "any other proofs." The court asked if petitioner had additional witnesses, to which petitioner responded that it did not. The court did not inquire whether Lenora or James wished to present evidence in support of their petitions seeking appointment as Leonard's guardian. Thereafter, the court made its findings. First, the court again found that Leonard was incapacitated and that the appointment of a guardian was appropriate. That decision has not been challenged on appeal. Second, the court found that James and Lenora were both "completely uncooperative with the process." When Lenora commented on that particular finding the court instructed her that it was the court's turn to talk despite the fact that Lenora had been given no opportunity to present her case. The court found that Lenora's uncooperativeness "can affect the wellbeing of Mr. Leonard Dear," noting that it seems the family "at best" had "no understanding of the process" and "at worst" were just being "obstreperous in the process." Accordingly, relevant to this appeal, the court found that Lenora was unsuitable to serve as Leonard's guardian and it appointed Kaiserlian as Leonard's guardian.

This appeal follows.

## II. DUE PROCESS

### A. STANDARD OF REVIEW

The trial court found that Lenora was not suitable to serve as a guardian for Leonard. The probate court's dispositional rulings are reviewed for an abuse of discretion, which occurred when the court "chooses an outcome outside of the range of reasonable and principled outcomes." *In re Guardianship of Gerstler*, __ Mich App __, __; __ NW2d __ (2018) (Docket No. 338935); slip op at 7 (quotation marks and citation omitted). "We review the probate court's findings of fact for clear error." *Id*., (quotation marks and citation omitted). "Whether a party has been afforded due process is a question of law, subject to review de novo." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

### B. ANALYSIS

The Estates and Protected Individuals Code, MCL 700.1101 *et seq.*, governs the appointment of guardians for incapacitated individuals. See *In re Guardianship of Redd*, 321 Mich App 398, 404; 909 NW2d 289 (2017). "The court may appoint a guardian if the court finds by clear and convincing evidence both that the individual for whom a guardian is sought is an incapacitated individual and that the appointment is necessary as a means of providing continuing care and supervision of the incapacitated individual, with each finding supported separately on the record. . . ." MCL 700.5306(1). Once the probate court finds the individual incapacitated by clear and convincing evidence, the statutory framework "establishes an order of priority that must be followed when a probate court selects a guardian" for an incapacitated individual. *Gerstler*, __ Mich App at __; slip op at 1. Neither Kaiserlian nor Lenora have priority under MCL 500.3113(2) or (3).[2] However, under MCL 500.3113(4), the court had

---

[2] MCL 700.5313(2) and (3) provide:

discretion to "appoint any competent person who is suitable and willing to serve, including a professional guardian as provided in" MCL 700.5106.  Under MCL 700.5106, a professional guardian can only be appointed if it is in the incapacitated individual's best interests and "[t]here is no other person that is competent, suitable, and willing to serve in that fiduciary capacity in accordance with [MCL 700.5313]."

In this case, petitioner presented two witnesses: the GAL and Leonard's brother.  Lenora was permitted to cross examine both witnesses.  However, after calling his second witness, petitioner's lawyer stated, "I don't have any other proofs."  The court then asked, "[a]ny other

---

(2) In appointing a guardian under this section, the court shall appoint a person, if suitable and willing to serve, in the following order of priority:

(a) A person previously appointed, qualified, and serving in good standing as guardian for the legally incapacitated individual in another state.

(b) A person the individual subject to the petition chooses to serve as guardian.

(c) A person nominated as guardian in a durable power of attorney or other writing by the individual subject to the petition.

(d) A person named by the individual as a patient advocate or attorney in fact in a durable power of attorney.

(3) If there is no person chosen, nominated, or named under subsection (2), or if none of the persons listed in subsection (2) are suitable or willing to serve, the court may appoint as a guardian an individual who is related to the individual who is the subject of the petition in the following order of preference:

(a) The legally incapacitated individual's spouse. This subdivision shall be considered to include a person nominated by will or other writing signed by a deceased spouse.

(b) An adult child of the legally incapacitated individual.

(c) A parent of the legally incapacitated individual.  This subdivision shall be considered to include a person nominated by will or other writing signed by a deceased parent.

(d) A relative of the legally incapacitated individual with whom the individual has resided for more than 6 months before the filing of the petition.

(e) A person nominated by a person who is caring for the legally incapacitated individual or paying benefits to the legally incapacitated individual.

witnesses?" and petitioner's lawyer responded "no." The court immediately proceeded to issue its ruling, without inquiring whether Lenora or James—Leonard's siblings who had both filed petitions seeking to be appointed guardian—had any witnesses to present. Subsequently, when Lenora interrupted the court's ruling by challenging the court's finding that she was uncooperative, the court instructed her that her time to talk had, essentially passed, and it was the court's turn to talk. Later in the court's ruling, Lenora again asked if she could speak, and the court again denied her to opportunity to do so. Then, when Lenora complained about not being questioned by the court, the court informed her that it did not question her because she was not called as a witness despite the fact that no opportunity to do so had been afforded to her. Due process in civil cases requires that a party have the chance to know and respond to the evidence. *Traxler v Ford Motor Co*, 227 Mich App 276, 288; 576 NW2d 398 (1998).[3] On this record, it is clear that Lenora was not given a full opportunity to respond to petitioner's evidence and she was given no opportunity to present her own evidence in support of her petition. The court's decision to deny Lenora the opportunity to respond to the evidence amounted to a denial of due process requiring a reversal of the guardianship decision and a remand for further proceedings. On remand, the trial court shall afford Lenora the opportunity to present evidence regarding her suitability and willingness to serve as Leonard's legal guardian.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[3] We are cognizant that, as a pro per party, Lenora lacked familiarity with the process and likely did not know to advocate for the opportunity to present her case. However, parties representing themselves are typically granted some leeway in court proceedings. See *Haines v Kerner*, 404 US 519, 520-521; 92 S Ct 594; 30 L Ed 2d 652 (1972).