*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* Guardianship of VIRGINIA WAHAB.

LOURDES NURSING HOME,

        Petitioner-Appellee,

and

JON B. MUNGER, Guardian of VIRGINIA
WAHAB, a legally protected person now
deceased,

        Appellee,

v

MIMI BRUN,

        Appellant,

and

ELLEN MORGAN, SISTER HELEN ESSA, and
JENNIFER CARNEY,

        Other Parties.

UNPUBLISHED
January 30, 2020

No.   343838; 345132
Oakland Probate Court
LC No.   2016-370475-GA

*In re* Conservatorship of VIRGINIA WAHAB.

JON B. MUNGER, Conservator of VIRGINIA
WAHAB, a legally protected person now
deceased,

        Petitioner-Appellee,

v                                                          No. 347501
                                                           Oakland Probate Court
MIMI BRUN,                                                 LC No. 2016-371616-CA

       Appellant,

and

ELLEN MORGAN, SISTER HELEN ESSA, and
JENNIFER CARNEY,

       Other Parties

and

LOURDES NURSING HOME, BRADLEY
SILVERSTEIN, MARK SHAPIRO, and
KIMBERLY SHAPIRO,

       Other Parties-Appellees.

_____

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

These appeals concern eight orders entered by the probate court in the guardianship and conservatorship of Virginia Wahab (the ward). In Docket No. 343838, appellant, Mimi Brun, the ward's adult daughter, appeals by right the probate court's order denying appellant's motion to vacate a bench warrant and injunction. In Docket No. 345132, appellant appeals by right the probate court's opinion and order terminating the guardianship and conservatorship. On appeal, appellant also challenges the order appointing a guardian, the order appointing a special fiduciary and revoking appellant's power of attorney, the order denying appellant's motion for reconsideration of the previously mentioned Guardianship Orders, and the order requiring appellant to pay appellee Lourdes Nursing Home (Lourdes) for the ward's care. In Docket No. 347501, appellant appeals by leave granted the probate court's opinion and order terminating the conservatorship and related order terminating the conservatorship, and the probate court's order discharging the estate. This Court consolidated these appeals on its own motion.[1] We affirm in each appeal.

_____

[1] See *In re Conservatorship of Virginia Wahab*, unpublished order of the Court of Appeals, issued June 14, 2019 (Docket No. 347501).

-2-

## I. BACKGROUND

In LC No. 2016-370475-GA, the probate court in June 2016 appointed a guardian for the ward, who at 94-years-old suffered from dementia and declining health. At the time, the ward's bill at Lourdes remained unpaid. Apparently, the ward's insurance coverage had lapsed and her then-power of attorney, appellant, had not arranged for Medicaid and had left the ward in Lourdes's care where she had incurred about $31,000 in charges. In addition to ordering the appointment of a guardian, Jon Munger, the probate court also entered an order appointing Munger as special fiduciary and revoking appellant's power of attorney (hereinafter, collectively the "Guardianship Orders"). Soon after becoming guardian, Munger, in his efforts to obtain Medicaid for the ward, discovered that appellant had transferred the ward's Oak Park, Michigan home to herself and had made multiple wire transfers from the ward's accounts. The probate court entered an order appointing Munger as conservator in LC No. 2016-371616-CA.

The guardianship and conservatorship did not go smoothly, with Munger filing motions to compel an accounting and to limit visitation and appellant filing a motion for the release of her mother. At an October 2016 hearing, the parties indicated that they had settled certain disputes, including that appellant had negotiated payment of the outstanding balance owed to Lourdes and that Lourdes was simply waiting to be paid. That same day, the probate court entered an order that appellant would pay Lourdes $25,000 on or before October 30, 2016 (the "Settlement Order").

When appellant did not remit payment pursuant to the Settlement Order, Lourdes, in December 2016, filed a petition for a show-cause order. The probate court granted the order. In the interim, Lourdes also filed an emergency motion for a temporary restraining order as a result of appellant's allegedly intimidating behavior with Lourdes's staff. When appellant failed to appear at the show-cause hearing, the probate court issued a bench warrant and also issued an injunction temporarily preventing appellant from entering Lourdes's facility.

More than six months passed before appellant appeared before the probate court. In October 2017, she moved to vacate the Settlement Order, asserting that the transcript of the hearing did not establish that she had agreed to pay Lourdes $25,000. At about the same time, appellant filed a motion to terminate both the guardianship and conservatorship.

At the hearing on appellant's motion to vacate in December 2017, the probate court reviewed the transcript and agreed that $25,000 was not specified on the record. The probate court noted, however, that at the time the settlement was entered, the outstanding balance owed to the nursing home was approximately $50,000, that appellant had agreed to pay by month's end but had not paid anything, and that appellant was free to negotiate a different amount with Lourdes if Lourdes was willing to undertake further negotiations. The probate court stated:

> I will set aside that provision for the $25,000.00 agreement, because it wasn't specified on the record, and whatever the original amount was stands.

Upon questioning from appellant's counsel, the probate court clarified:

[W]hatever the amount was that was owing prior to this supposed negotiation will stand.

Thereafter, the probate court entered an order modifying the Settlement Order "by deleting the portion of the order requiring Mimi Brun to pay Lourdes $25,000.00 prior to October 30, 2016." On the same date, the court entered an order releasing the bench warrant.

Subsequently, Lourdes filed a motion for entry of an order requiring appellant to pay Lourdes for the ward's care. Lourdes pointed out that the probate court had found at the December 2017 hearing that appellant was liable for whatever charges remained owing as of October 5, 2016. Lourdes attached to the motion a copy of the patient-contract form ("Patient Contract"), under which appellant agreed as follows:

> On behalf of Virginia Wahab, I, Mimi Brun, Private Pay Responsible Party, hereby agree to pay Lourdes, Inc. for such care and services provided to Virginia Wahab the sum of $352.00 per day.

The end of the Patient Contract provided:

 "RESPONSIBLE PARTY/GUARANTEE

> The undersigned agrees to be liable for payments due under this Contract . . . ."

Appellant provided her signature under this statement, which she dated February 24, 2016.

Before the hearing on Lourdes's motion for payment, the probate court held a two-day bench trial on appellant's motion to terminate the guardianship and conservatorship. After the trial and another hearing on the motion for payment, the probate court entered an order requiring appellant to pay Lourdes $64,353 and an opinion and order terminating the guardianship and conservatorship. In the latter (the "Termination Order"), the probate court found that appellant remained contractually liable to Lourdes and that Lourdes could grant or deny appellant access to Lourdes as it saw fit. Then, after a hearing on Munger's final accounting, the probate court entered an order of discharge on September 10, 2018 (the "Discharge Order"), finding that Munger had fulfilled his fiduciary duties and closing the estate. These appeals followed.

## II. DOCKET NO. 343838

In Docket No. 343838, appellant contends that the probate court erred by issuing the show-cause order, and the subsequent orders that followed, including the bench warrant and injunction, because service of process was defective. Appellant asks this Court, therefore, to hold these orders void *ab initio*. Additionally, appellant claims that the bench warrant should be void because the probate court failed to make any findings of fact or conclusions of law to support its imposition. Appellant raises a similar argument with regard to the injunction, asserting that Lourdes did not meet the four-part test necessary for a preliminary injunction and that the court failed to make findings under this test.

These issues, however, are moot. It is well established that this Court will not decide moot issues; i.e., issues that have no practical legal effect on the case before us. *People v*

-4-

*Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010). In this case, appellant eventually complied with the probate court's show-cause order by appearing in court to contest the Settlement Order; accordingly, the probate court released the bench warrant. Moreover, the probate court granted appellant's motion to terminate the guardianship, restored her status as the ward's power of attorney, and returned the ward to appellant's care. The probate court ended the temporary restraining order, thereby allowing appellant to enter Lourdes's premises. To declare any of these orders void *ab initio*, then, would be purposeless given that appellant has already obtained relief from these orders in the probate court.

When issues raised by a party on appeal are moot, we will decline to consider the substantive merits of the claim unless an exception to the mootness doctrine exists. The only exception appellant asserts—and only in relation to the bench warrant—is that the bench warrant could have collateral legal consequence in a potential fraud claim against appellees. See *Mead v Batchlor*, 435 Mich 480, 486-487; 460 NW2d 493 (1990), abrogated on other grounds in *Turner v Rogers*, 564 US 431; 131 S Ct 2507; 180 L Ed 2d 452 (2011). Appellant argues that the bench warrant "continues to validate the fraudulent $25,000" in the Settlement Order and affects her in a material way moving forward because she has a "plausible cause of action against Appellees for . . . seeking and obtaining a Bench Warrant" based on the fraudulent provision in the Settlement Order. This argument is without merit. The probate court issued the bench warrant because appellant failed to appear to show-cause why she should not have to pay the $25,000 previously ordered. This $25,000 amount was subsequently vacated on appellant's motion and the probate court's use of its contempt powers to prompt appellant's appearance before it offers no validation that the $25,000 order was proper. In other words, the basis for the bench warrant was appellant's nonappearance; whether the amount of the Settlement Order was proper was a separate issue resolved in appellant's favor. Accordingly, we decline to address the aforementioned issues as they have no practical legal effect on controversies now existing.

## III. DOCKET NO. 345132

### A. GUARDIANSHIP ORDERS

In Docket No. 345132, appellant first argues that the Guardianship Orders, including the order denying reconsideration of the Guardianship Orders, should be held void *ab initio* for a variety of procedural and substantive deficiencies. Again, however, these issues are moot because appellant obtained relief in the probate court. The probate court terminated the guardianship in August 2018, appellant was returned to her position as the ward's power of attorney, and the ward was returned to appellant's care. Because the probate court has already terminated the guardianship, declaring the Guardianship Orders void would have no practical effect on any existing controversy. Since appellant has not shown that any exception to the mootness doctrine applies, we decline to address this issue.

### B. ORDER REQUIRING PAYMENT

Next, appellant argues that that the probate court abused its discretion by denying appellant her right to present evidence at the hearing on Lourdes's motion for payment. Appellant asserts that she is not liable for any amount under the Patient Contract, given that the contract was between the ward and Lourdes, and that the probate court erred by preventing her

from presenting evidence showing that the contract Lourdes presented was fraudulent. The probate court's dispositional rulings are reviewed for an abuse of discretion. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). The probate court's exercise of its inherent power to control the proceedings before it "may be disturbed only upon a finding that there has been a clear abuse of discretion." *Maldonado v Ford Motor Co*, 476 Mich 372, 388, 719 NW2d 809 (2006). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Guardianship of Redd*, 321 Mich App at 403 (internal citation and quotation marks omitted).

After the probate court struck the portion of the Settlement Order requiring appellant to pay Lourdes $25,000, Lourdes moved for entry of an order requiring appellant to pay Lourdes. Lourdes based its motion on the Patient Contract, as well as the court's statements at the December 2017 hearing setting aside the Settlement Order and indicating that appellant was liable for "whatever" amount was owed to Lourdes under the contract as of October 5, 2017. Appellant did not file a written response to the motion. At the hearing, however, appellant sought to introduce for the first time evidence that the Patient Contract Lourdes had submitted was fraudulent. The probate court stated that it would not allow the presentation of this evidence at the immediate hearing, but that appellant could file a separate motion seeking to challenge the contract with the proposed evidence. Appellant never filed such a motion.

Appellant's failure to file a written response left Lourdes without notice that appellant intended to challenge the validity of the contract. By making her argument for the first time at the hearing, appellant precluded Lourdes from investigating the argument or preparing a defense. The trial court was well within its discretion in directing appellant to make this argument through a written motion. See MCR 2.119(E). Appellant, having not taken advantage of the opportunity to file a written motion challenging the contract's validity, created the very error she now complains of on appeal. We will not allow appellant to harbor error as an appellate parachute and therefore decline to address this issue. See *Tingley v Kortz*, 262 Mich App 583, 590; 688 NW2d 291 (2004).

## C. TERMINATION OF GUARDIAPNSHIP ORDER

Appellant also requests that this Court strike 17 findings from the probate court's Termination Order because those findings are, allegedly, either not true or not part of the record. We review the probate court's findings of fact for clear error. *In re Guardianship of Redd*, 321 Mich App at 403. "A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made." *Id.* (internal citation and quotation marks omitted).

At the outset, we must note that appellant was the prevailing party on her motion to terminate the guardianship. Despite her issue with the trial court's findings, appellant received the relief she requested: the guardianship was terminated. Notwithstanding that the judgment was in her favor, appellant disputes the probate court's findings that Munger provided the ward satisfactory care, custody, and control and served the ward's interests; that Munger should no longer be subject to appellant's "vile retribution;" that the ward received appropriate care at Lourdes; that appellant was never able to account for the ward's funds and took no steps to investigate or recover funds; that appellant was prohibited from visiting the ward at Lourdes

because of appellant's abusive conduct and failure to comply with court orders; and that appellant was personally liable to Lourdes under the Patient Contract. Appellant also disputes multiple findings regarding appellant's conduct during the litigation.

"To maintain an appeal, a person must ordinarily be 'aggrieved' by the lower court's decision." *Spires v Bergman*, 276 Mich App 432, 441; 741 NW2d 523 (2007). An aggrieved party is not one who is merely disappointed over an aspect of the lower court's decision. Rather, to maintain an appeal, a litigant must demonstrate that she has suffered "a concrete and particularized injury" as a result of the trial court's actions. *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291-292; 715 NW2d 846 (2006).

Of the challenged statements, appellant was certainly aggrieved by the probate court's finding that she is personally liable to Lourdes under the Patient Contact. Appellant, however, has not established that the finding was clearly erroneous. As previously noted, the Patient Contract was signed by appellant as the private-pay responsible party, with an express agreement to be liable for amounts due under the contract. Appellant declined to take advantage of the probate court's opportunity to challenge the Patient Contract below through a properly noticed written motion. Without any properly admitted evidence to the contrary, there is nothing in the record from which the probate court could find that appellant was not personally liable to Lourdes. Given that appellant failed to pursue a challenge to the Patient Contract below, we decline to entertain any challenge to the contract on appeal. Accordingly, appellant's argument is without merit.

With regard to the remaining 16 contested factual findings, appellant has failed to explain how she suffered a particularized or concrete injury as a result of those findings or how she would benefit from striking the findings. Appellant cursorily states at the outset that the probate court made the findings to insulate Munger from liability, implying that the findings could have collateral legal consequences. Yet, appellant fails to provide any analysis of how each particular finding could harm her in a hypothetical lawsuit against Munger. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims." *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002) (internal citation and block notation omitted). Consequently, having failed to demonstrate a concrete and particularized harm, we conclude that appellant has failed to demonstrate that she is an aggrieved party and decline to consider further these findings.

IV. DOCKET NO. 347501

A. TERMINATION OF CONSERVATORSHIP ORDER

In Docket No. 347501, appellant challenges the Termination Order as to the conservatorship, again arguing that the same factual findings were erroneous. We have already concluded that appellant's argument regarding the trial court's finding that she is personally liable to Lourdes is without merit and that appellant has failed to demonstrate that she was aggrieved by the remaining findings. These conclusions apply with equal force to appellant's challenge to the termination of the conservatorship. Thus, appellant's argument is without merit. Appellant additionally raises multiple issues outside the scope of this Court's order granting

appellant's delayed application for leave to appeal, which limited consideration of the questions on appeal to the Termination Order and the Discharge Order. Because these issues are not related to either the Termination Order or the Discharge Order, we do not consider them. See MCR 7.205(E)(4).

## B. DISCHARGE ORDER

Finally, appellant argues that a finding in the probate court's Discharge Order is clearly erroneous because there is no evidence to support it. The Discharge Order was issued on a Supreme Court Administrative Office approved form for "order of discharge." The order discharged Munger as conservator after the court had accepted Munger's final accounting of the ward's estate and closed the estate. The order provided the following language: "[i]t appears the fiduciary in this matter has fully performed the duties required by law." It is this finding that appellant takes issue with on appeal.

Again, only an aggrieved party may maintain an appeal. "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *In re Estate of Trankla*, 321 Mich 478, 482; 32 NW2d 715 (1948) (internal citation and quotation marks omitted). Again, "a litigant must have suffered a concrete and particularized injury" arising from the lower court's actions. *Federated Ins Co*, 475 Mich at 291-292.

Certainly, appellant is not aggrieved by the termination of the conservatorship—this was the result appellant sought. Rather, appellant suggests that she was aggrieved by the probate court's finding in the Discharge Order indicating that Munger "appears . . . [to have] fully performed the duties required by law." Appellant argues that this finding gives Munger a defense in a hypothetical future lawsuit she may maintain against Munger for breach of his fiduciary duties. We disagree. The Discharge Order in no way deprives plaintiff of her right to pursue Munger for any allegedly unlawful acts and, further, the finding in no way provides Munger with an air-tight defense, should a claim be filed and should he raise such a defense. Indeed, the use of the term "appears" indicates that the probate court was not making a definite factual finding intended to foreclose further exploration of the issue. Because appellant has failed to demonstrate a concrete, particularized harm arising from this finding, we conclude that she has failed to show that she is aggrieved by the Discharge Order. Therefore, we decline to address this issue.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford