*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* JCM, Minor.

UNPUBLISHED
May 30, 2024

No. 368224
Berrien Circuit Court
Family Division
LC No. 2013-000407-GM

Before: YATES, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order denying termination of petitioners' guardianship of JM, a minor child. We remand for further proceedings consistent with this opinion.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2013, Children's Protective Services (CPS) removed JM from respondent's care and placed her in the care of petitioners, JM's grandparents. The removal was based on respondent's prostitution and abuse of illegal drugs. In September 2013, the trial court granted petitioners' petition for guardianship of JM. Respondent had no contact with JM for the next two years and, although she eventually became sober, she admitted to abusing methamphetamine during this time.

JM was diagnosed with several mental-health issues and emotional impairments. She was suspended during preschool and kindergarten because of her inappropriate behaviors toward teachers and students, which included biting and hitting. Consequently, she participated in special education services as a supplement to her regular learning environment, and in speech and social services. Respondent was not involved in the meetings regarding JM's progress and needs. Respondent testified at the hearing on her petition that petitioners did not communicate any information to her regarding these meetings. She also said that petitioners refused to sign a release of information so that she could communicate with JM's teachers or the school social worker. And she said that petitioners failed to inform the school and medical authorities of her existence, which further prevented her from obtaining information on the child's school or medical treatments.

-1-

In March 2015, respondent moved to modify the guardianship and sought a reunification plan that would include unsupervised parenting time. Respondent informed the trial court of her sobriety and that she had obtained independent housing and government benefits, and was currently caring for her one-year-old daughter. The trial court issued an order that modified the guardianship and established a supervised parenting plan. The parenting plan visits occurred in respondent's home two Saturdays and one Friday every month, but they did not include any overnight visits.

In June 2019, respondent moved to terminate the guardianship. The trial court ordered the Department of Health and Human Services (DHHS) to prepare an investigative report, and it ordered a psychological evaluation and parenting-time assessment of respondent and petitioners. In 2021,[1] respondent moved for additional parenting time. The parties agreed to employ a counselor to provide reunification therapy for JM and respondent. The counselor recommended one overnight parenting-time session per month initially, with a gradual increase in parenting time over several months until JM was returned to respondent's care full-time. The parties attempted to resolve the parenting time issue through settlement conferences, but were unsuccessful.

In April 2023, the trial court denied respondent's petition to terminate the guardianship. Respondent moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's dispositional rulings. *In re Guardianship of Redd*, 321 Mich App 398, 403; 909 NW2d 289 (2017). A trial court abuses its discretion when it choses an outcome outside the range of principled outcomes. *Id.* A trial court necessarily abuses its discretion when it makes an error of law. *TM v MZ (On Remand)*, 326 Mich App 227, 235-236; 926 NW2d 900 (2018). This Court reviews de novo questions of law. *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

## III. ANALYSIS

Respondent argues that the trial court imposed an improper evidentiary standard on her. Respondent also argues that the trial court erred in best-interest analysis. We disagree with the former argument, and we remand for the trial court to provide further articulation regarding its best-interest analysis.

Our courts have long respected the fundamental liberty interest that parents hold in the care, custody, and management of their children. See *Santosky v Kramer*, 455 US 745, 758-759; 102 S Ct 1388; 71 L Ed 2d 599 (1982). This Court has recognized that the state ordinarily has no right to interfere with a parent-child relationship. *In re AP*, 283 Mich App 574, 591; 770 NW2d 403 (2009). However, when the parent proves unable to parent his or her child, the state may

---

[1] It appears that the progress of these proceedings was significantly slowed by the COVID-19 pandemic.

interfere with the parent and child's "mutual due process liberty interests" by demonstrating parental unfitness. *In re Clausen*, 442 Mich 648, 687, 687 n 46; 502 NW2d 649 (1993).

## A. EVIDENTIARY STANDARD

Respondent argues that the trial court imposed a legally improper burden on respondent by requiring her to establish by clear and convincing evidence that termination of the guardianship was in JM's best interests. We disagree with her characterization of the record.

Petitions to terminate a guardianship are governed by MCL 700.5208 (parental petition to terminate guardianship) and MCL 700.5209 (limited guardianship and termination). In this case, the trial court granted relief under MCL 700.5209(2)(c), which states,

> If the minor resides with the guardian or limited guardian for not less than 1 year and if the court finds that the minor's parent or parents have failed to provide the minor with parental care, love, guidance, and attention appropriate to the child's age and individual needs resulting in a substantial disruption of the parent-child relationship, [the court may] continue the guardianship if it is established by clear and convincing evidence that the continuation would serve the best interests of the minor.

In this case, the trial court made the following statement regarding the evidentiary standard at play in these proceedings:

> [T]he standard that needs to be met for termination of a guardianship, inclusive of the best interests of the minor, rests upon a demonstration specifically of clear and convincing evidence, the minor having resided with the guardian for, in this case, clearly not less than a year, and the parents having failed to provide the minor with specifically parental care, love, guidance, and attention that would appropriate to the child's age, and as argued by [counsel for petitioners], and the circumstances supporting that, there is not, has not been , and quite candidly, could not have been a demonstration of that met by the petitioner [sic, respondent] . . . .

Although the trial court stated the standard in MCL 700.5209(2)(c) out of order and in an arguably confusing manner, there is no evidence that the trial court improperly applied a clear-and-convincing-evidence standard *to respondent*. A trial judge is presumed to know and understand the applicable law. See *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007). MCL 700.5209(2)(c) indicates that the clear-and-convincing-evidence standard applies to the party attempting to preserve the guardianship in the context of the child's best interests, after the trial court finds that the child's parent or parents "minor's parent or parents have failed to provide the minor with parental care, love, guidance, and attention appropriate to the child's age and individual needs resulting in a substantial disruption of the parent-child relationship." The trial court's statement indicates an understanding of the requirements of MCL 700.5209(2)(c), notwithstanding some arguably awkward phrasing, and nothing in the record suggests that the trial court believed that it was respondent's burden to provide clear and convincing evidence that termination of the guardianship was in JM's best interests. *Utrera*, 281 Mich App at 9.

B.  BEST-INTEREST ANALYSIS

Respondent also argues that the trial court abused its discretion when it concluded that termination of the guardianship was not in the child's best interests.  On the current record, we conclude that remand for further articulation of the trial court's findings with respect to the relevant best-interest factors is required.

"The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq.*, governs the laws concerning the affairs of protected individuals and legally incapacitated individuals."  *In re Guardianship of Gordon*, 337 Mich App 316, 318; 975 NW2d 114 (2021).  By contrast, the Child Custody Act, MCL 722.21 *et seq.*, governs child custody disputes.  *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008).  The best-interest factors of the Child Custody Act, MCL 722.23, are also codified in the Estates and Protected Individuals Code.  MCL 700.5101(a). This Court has stated that because the Child Custody Act and the guardianship statutes share the same purpose of promoting the best interests of children, "the two statutes may be interpreted consistent with each other, or in pari materia."  *Deschaine v St Germain*, 256 Mich App 665, 671 n 9; 671 NW2d 79 (2003).

MCL 700.5101(a) defines "best interests of a minor" in the context of guardianship proceedings as "the sum total of the following factors to be considered, evaluated, and determined by the court":

(i) The love, affection, and other emotional ties existing between the parties involved and the child.

(ii) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue educating and raising the child in the child's religion or creed, if any.

(iii) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(iv) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(v) The permanence, as a family unit, of the existing or proposed custodial home.

(vi) The moral fitness of the parties involved.

(vii) The mental and physical health of the parties involved.

(viii) The child's home, school, and community record.

(ix) The child's reasonable preference, if the court considers the child to be of sufficient age to express a preference.

(x) The party's willingness and ability to facilitate and encourage a close and continuing parent-child relationship between the child and his or her parent or parents.

(xi) Domestic violence regardless of whether the violence is directed against or witnessed by the child.

(xii) Any other factor considered by the court to be relevant to a particular dispute regarding termination of a guardianship, removal of a guardian, or parenting time.

In the context of child custody disputes, this Court has stated that trial courts must consider each factor and explicitly state its findings and conclusions. *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007). "When a trial court does not make such findings on the best-interest factors, the proper remedy is reversal and a remand for a new child-custody hearing." *Rivette v Rose-Molina*, 278 Mich App 327, 330; 750 NW2d 603 (2008). But, in making findings regarding the best-interest factors, a trial court need not comment on every matter in evidence or declare whether it accepted or rejected every proposition argued. See *Baker v Baker*, 411 Mich 567, 583; 309 NW2d 532 (1981). "However, the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." See *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005). Courts are also not required to give equal weight to all the factors. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). They may consider the relative weight of the factors as appropriate to the circumstances. *Id*.

In this case, the record shows that the trial court made findings that could have indicated consideration of several of the best-interest factors. For example, the trial court found that respondent had failed to provide "parental care, love, guidance, and attention" appropriate to JM's age and particular circumstances, including her health issues. Specifically, the trial court noted the fact that respondent had not had much experience dealing with JM's special needs and supporting her as a special needs child. The trial court stated that respondent had not been responsible for the JM's psychological or school emotional health. Overall, the trial court concluded that there was no "baseline" to determine whether respondent had the capacity to care for herself, given her own mental struggles, and the child, given the child's mental struggles. The trial court also stated that the parenting time so far enjoyed by respondent with JM was not actual parenting time "in the full sense of the word." The trial court also noted that JM was "really blossoming" in her current custodial environment with her grandparents. The trial court additionally noted respondent's mental health issues and stated that it had met with JM. However, the trial court never explicitly addressed the statutory best-interest factors or stated which factors it had considered, its conclusion regarding each of those factors, or how the underlying facts supported those conclusions.

We therefore conclude, based on the current record, that the trial court did not adequately articulate its best-interest findings on the record. Although the trial court discussed several facts from the case generally, it failed to link those facts to particular best-interest factors, and therefore failed to articulate a best-interest determination that was the sum total of the relevant best-interest factors that it had considered and evaluated. MCL 700.5101(a); see also *Rivette*, 278 Mich App

at 330. The purpose of an explicit analysis of the best-interest factors is to provide this Court with a sufficient record to determine whether the evidence clearly preponderates against the trial court's findings. *MacIntyre*, 267 Mich App at 452. We conclude that the current record is inadequate for us to do so.

Accordingly, we remand to allow the trial court to place on the record its findings regarding the relevant best-interest factors. The trial court should consider up-to-date information when doing so. See *Pierron v Pierron*, 282 Mich App 222, 262; 765 NW2d 345 (2009).

Remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Christopher P. Yates
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra

# Court of Appeals, State of Michigan

## ORDER

In re JCM, Minor

Docket No.   368224

LC No.      2013-000407-GM

Christopher P. Yates
Presiding Judge

Mark J. Cavanagh

Mark T. Boonstra
  Judges

Pursuant to the opinion issued concurrently with this order, this case is REMANDED for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

Proceedings on remand in this matter shall commence within 28 days of the Clerk's certification of this order, and they shall be given priority on remand until they are concluded. As stated in the accompanying opinion, the probate court shall articulate its findings on the best-interest factors on the record, taking into account up-to-date information. The proceedings on remand are limited to this issue.

The parties shall promptly file with this Court a copy of all papers filed on remand. Within seven days after entry, appellant shall file with this Court copies of all orders entered on remand.

The transcript of all proceedings on remand shall be prepared and filed within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 30, 2024
Date

_____
Chief Clerk