# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* GUARDIANSHIP OF DOROTHY REDD.

---

GARY REDD,

          Appellant,

v

JENNIFER CARNEY and NICHOLE LEGARDY,
as Co-Guardians for DOROTHY REDD, a Legally
Incapacitated Person,

          Appellees.

FOR PUBLICATION
September 19, 2017
9:15 a.m.

No. 335152
Oakland Probate Court
LC No. 2014-356995-GA

---

Before: GADOLA, P.J., and CAVANAGH and SWARTZLE, JJ.

SWARTZLE, J.

Dorothy Redd is an elderly woman with several relatives who care a great deal for her. One of her sons, Gary Redd, was appointed guardian of Dorothy[1] in 2014. Two years later, Gary's daughter, Nichole Legardy, sought to remove Gary as guardian because she alleged that he was no longer "suitable" to serve in that role under Michigan's Estates and Protected Individuals Code (EPIC). The probate court agreed, removed Gary as guardian, and appointed Nichole in his place.[2] Gary now appeals, claiming that the probate court applied the wrong standard for removal as well as the wrong burden of proof. As explained below, we conclude that the probate court did not err in removing Gary as Dorothy's guardian, and we affirm.

---

[1] Because of the number of relatives with the same last name, we use first names to refer to the family members involved in this case.

[2] The probate court also removed Gary as conservator, though he does not take issue with this removal in his statement of questions presented. MCR 7.212(C)(5).

-1-

# I. BACKGROUND

Dorothy is 93 years old and is the mother of five adult children: Gary, Michael Redd, Jerome Redd, Sean Burke, and Antonio Burke. At Dorothy's request, Gary has held power of attorney over her affairs since at least 2005.

In 2012, Dorothy was living in her home in Detroit with three of her sons, Jerome, Sean, and Michael. According to a report prepared by Dorothy's guardian ad litem in 2014, while living in that home, Dorothy's physical and mental condition deteriorated. Dorothy weighed less than 100 pounds and suffered from episodes of delusion. These health-related matters culminated in June 2012, when Gary received a phone call that Dorothy was roaming the streets in her nightgown telling neighbors that thirty or forty people were in her home trying to kill her. In the days following this incident, Gary moved Dorothy into his home, where she resided until August 2016.

In June 2014, Gary filed a petition with the Oakland County Probate Court seeking appointment as Dorothy's guardian. Jerome and his daughter, Katrina Tao-Muhammad, opposed the petition and argued that Gary was preventing Dorothy from visiting with family. The probate court found that Dorothy lacked the capacity to care for herself and appointed Gary and an attorney, Jennifer Carney, as co-guardians.

Over the next two years, several disputes arose between the family members. Several family members continued to argue that Gary was preventing Dorothy from visiting family and argued that Gary was unduly influencing Dorothy against her family members. Jerome and Katrina also questioned whether Gary was properly managing Dorothy's assets and whether Gary should be added to the lease on Dorothy's old home. Michael, among other family members, requested that the probate court prevent Gary from evicting him and Dorothy's other family members from her old home. The probate court entered numerous orders aimed at facilitating Dorothy's visitation with her family members, improving the accounting of Dorothy's finances, and preventing the eviction of Dorothy's family members from her old home. The probate court nevertheless refused to remove Gary as Dorothy's guardian, despite several motions seeking his removal.

In August 2016, the probate court changed course after learning of a physical altercation between Gary and Nichole regarding Dorothy's lack of visitation with family members. The probate court heard testimony from several past and current members of the family, a police officer, and several unrelated individuals. In all, seventeen persons testified. Of those seventeen persons, at least ten testified that Gary was unduly influencing Dorothy's opinions of her family and was preventing her from carrying on relationships with various family members. Importantly, several persons who previously supported Gary's guardianship now believed that Gary was an unsuitable guardian. Among these individuals were Gary's daughter, Nichole, and Dorothy's co-guardian, Carney. The probate court found particularly insightful a police officer's testimony that while Gary had brought Dorothy to the police station as part of a court-ordered visit with several family members, he blocked her from interacting substantively with her family members and seemed to be undermining the entire visit.

For her part, Dorothy testified that she wished for Gary to continue as her guardian. The probate court concluded, however, that it was only required to honor her preference when that person was suitable to serve as guardian. Ultimately, the probate court found that Gary's unwillingness to facilitate relationships between Dorothy and various family members rendered Gary unsuitable to continue as her guardian. The probate court removed him as guardian and appointed Nichole as co-guardian with Carney. Gary appeals this decision as of right.

## II. ANALYSIS

### A. STANDARD OF REVIEW

We review the probate court's dispositional rulings for an abuse of discretion. *In re Bibi Guardianship*, 315 Mich App 323, 328; 890 NW2d 387 (2016). A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. *Id*. at 329. We review the probate court's findings of fact for clear error. *Id*. at 328. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. *Id*. at 329. We review de novo any statutory or constitutional interpretation by the probate court. *Id*. at 328.

### B. GUARDIANSHIP FOR INCAPACITATED INDIVIDUALS UNDER THE EPIC

Article V, part 3 of the EPIC, MCL 700.5301 *et seq*., concerns the appointment of guardians for incapacitated individuals ("wards"). Under MCL 700.5303(1), an individual "in his or her own behalf, or any person interested in the individual's welfare, may" file a petition seeking a finding of incapacity and the appointment of a guardian. "The court may appoint a guardian if the court finds by clear and convincing evidence both that the individual for whom a guardian is sought is an incapacitated individual and that the appointment is necessary as a means of providing continuing care and supervision of the incapacitated individual, with each finding supported separately on the record." MCL 700.5306(1). The EPIC sets forth a prioritized list of persons who could be appointed as guardian, including a person who the ward "chooses to serve as guardian," but only if that person is "suitable and willing to serve." MCL 700.5313(2)(b).

If a guardian is appointed, the ward is granted a number of rights by statute. MCL 700.5306a. Relevant to this case, the ward is granted the right to "choose the person who will serve as guardian, if the chosen person is suitable and willing to serve." MCL 700.5306a(1)(aa). The EPIC also includes provisions for removing a guardian. MCL 700.5310. In this matter, Gary was removed after a petition was filed under MCL 700.5310(2), which provides that "[t]he ward or a person interested in the ward's welfare may petition for an order removing the guardian, appointing a successor guardian, modifying the guardianship's terms, or terminating the guardianship."

### C. A GUARDIAN CAN BE REMOVED IF HE IS NO LONGER "SUITABLE"

There is no dispute that Dorothy is incapacitated and the appointment of a guardian was appropriate. Because Dorothy wished for Gary to serve as her guardian, and because Gary was willing to serve, Gary was entitled to remain as her guardian under MCL 700.5313(2)(b) unless there was sufficient ground for his removal under MCL 700.5310.

The EPIC does not set forth a specific standard for removal of a guardian. MCL 700.5310 provides the right to petition for an order removing a guardian, but it is otherwise silent as to how a probate court is to determine whether the guardian should be removed. While MCL 700.5313 explicitly states that a person who is "suitable and willing" can be *appointed* a guardian in certain circumstances, the section does not similarly state that the same standard applies to remove a person as guardian. The remaining provisions of the EPIC dealing with guardians for incapacitated individuals provide little insight on this matter.

In construing the meaning of a particular provision in statute, in the absence of a definition, we turn first to the statutory context. *McCormick v Carrier*, 487 Mich 180, 190-192; 795 NW2d 517 (2010). Elsewhere in the EPIC, the Legislature provided for the appointment and removal of a guardian for a minor, as well as the appointment and removal of a conservator for a minor or incapacitated person. In the first circumstance, the Legislature set forth the same standard for appointment and removal of a minor's guardian—when the appointment or removal serves the minor's welfare. Compare MCL 700.5212 with MCL 700.5219(1). In the second circumstance, the Legislature set forth different standards for appointment and removal of a conservator. For the appointment, the potential conservator must explain "the basis of the claim to priority for appointment," MCL 700.5404(2), and the court can consider several enumerated factors, including whether the potential conservator is "suitable and willing to serve," MCL 700.5409(1)(h). For the removal, however, a petitioner must simply establish that removal of a current conservator would be "for good cause." MCL 700.5414. Given how appointments and removals are handled in other parts of the EPIC, little can be gleaned from those parts on the appropriate standard for removal of a guardian in the incapacitated-individuals context.

Returning to the appointment of a guardian for an incapacitated individual under MCL 700.5313, while that section does not directly state that the same standard applies to removal, it does provide some guidance on the matter. Specifically, the section generally sets forth the priority of potential guardians. In several places, however, the section further provides that the court may appoint someone else when a previously identified or designated person is not "suitable or willing to serve." See, e.g., MCL 700.5313(3),(4). While this language certainly applies to persons who were identified-but-disqualified prior to any appointment, it also would appear to apply to a person who was previously designated (and appointed) as a guardian but *who no longer* is "suitable or willing to serve." In this case, the standard for appointment— suitable and willing to serve—would be the standard for removal as well. We find such a reading to be a reasonable construction of the statute, especially considering that the purpose of this part of the EPIC is to protect incapacitated individuals with guardians who have the skills and willingness to act in the best interests of those individuals. *Macomb County Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001). Thus, we hold that to remove a guardian under MCL 700.5310, the probate court must find that the guardian is no longer suitable and willing to serve.

## D.  WHETHER A GUARDIAN IS "SUITABLE"

We must next construe the meaning of "suitable," as the EPIC does not define the term, nor is there controlling authority defining the term in this context.  Beginning again with statutory context, *McCormick*, 487 Mich at 190-192, the overarching purpose of a guardian under the EPIC is to provide "for the ward's care, custody, and control," MCL 700.5314.  In doing so, the EPIC prohibits certain financial self-dealing by the guardian with respect to the ward.  See MCL 700.5313(1).  Moreover, the code provides that a guardian could be someone who served in that role out-of-state if the person is otherwise "qualified, and serving in good standing."  MCL 700.5313(2)(A).  Finally, the EPIC sets forth several specific duties of a guardian, including to provide for the ward's financial, medical, and social well-being as well to make an accounting to the court or other interested individuals.  MCL 700.5314.  The EPIC thus makes clear that the guardian's focus of concern must be on the ward, that decisions made on behalf of the ward must be in the interests of the ward and not the guardian, and that the guardian must be qualified to achieve the purposes set forth in the EPIC.

Looking to authoritative dictionaries for further guidance, *Anzaldua v Neogen Corp*, 292 Mich App 626, 632; 808 NW2d 804 (2011), *Black's Law Dictionary* (8th ed, p 1476) defines "suitable" as "fit and appropriate for [its] intended purpose."  Similarly, *Merriam Webster's Collegiate Dictionary* (11th ed, p 1248) defines the term as "adapted to a use or purpose" or "able/qualified."  Taken together, the statutory context and guidance from authoritative dictionaries confirm that a "suitable" guardian is one who is qualified and able to provide for the ward's care, custody, and control.  With respect to whether an existing guardian remains suitable, it logically follows that particularly relevant evidence would include (1) evidence on whether the guardian was still qualified and able, and (2) evidence on whether the guardian did, in fact, satisfactorily provide for the ward's care, custody, and control in the past.

## E.  THE STANDARD OF PROOF NEEDED
## TO SHOW THAT A GUARDIAN IS NOT "SUITABLE"

With respect to the evidentiary standard to use on whether a current, ward-preferred guardian should be removed, the EPIC does not explicitly provide for one.  As with the previous questions, then, we look first to the statutory context of the EPIC.  When initially determining whether a person needs a guardian, the EPIC specifically states that the probate court must find "by clear and convincing evidence" that an individual is incapacitated and that the appointment of a guardian is necessary.  MCL 700.5306(1).  Unlike the initial-determination stage, however, the Legislature chose not to set forth a particular evidentiary standard with respect to whether a person is unsuitable to be named—or to remain as—a guardian.  See MCL 700.5310; MCL 700.5313(2).  We must construe this "omission of a provision in one statute that is included in another statute . . . as intentional." *Donkers v Kovach*, 277 Mich App 366, 371; 745 NW2d 154 (2007).  Accordingly, we conclude that the Legislature did not intend to apply the "clear and convincing evidence" standard to the question of a person's suitability to remain a guardian.

We find additional guidance by considering whether the question of suitability is left to the discretion of the probate court. In *In re Williams Estate*, 133 Mich App at 11, this Court answered that question by comparing two provisions of the EPIC. Specifically, MCL 700.5313(3)[3] provides in relevant part that "[i]f there is no person chosen, nominated, or named under subsection (2), or if none of the persons listed in subsection (2) are suitable or willing to serve, the court *may* appoint as a guardian an individual who is related to the individual who is the subject of the petition in the following order of preference." The *Williams Estate* court concluded that the Legislature's use of the term "may" in this provision indicated that the appointment of an individual under MCL 700.5313(3) was to be committed to the discretion of the probate court. *In re Williams Estate*, 133 Mich App at 10-11.

Unlike in *Williams Estate*, however, the probate court's determination in this case was made under the immediately preceding subsection, which states that the probate court "*shall* appoint a person, if suitable and willing to serve," who is preferred by the guardian. MCL 700.5313(2) (emphasis added). The Legislature's use of the word "shall" in this context "indicates a mandatory and imperative directive." *Fradco, Inc v Dep't of Treasury*, 495 Mich 104, 114; 845 NW2d 81 (2014). Thus, this mandatory directive indicates that a standard giving significant discretion to the probate court is not the correct one to use here.

Where a statute fails to state the standard that probate courts are to use to establish a particular fact, the default standard in civil cases—preponderance of the evidence—applies. *Mayor of Cadillac v Blackburn*, 306 Mich App 512, 522; 857 NW2d 529 (2014). Because the Legislature has not explicitly provided otherwise, we conclude that a probate court must use the preponderance-of-the-evidence standard when determining whether a person is "suitable" to serve as a ward's guardian under MCL 700.5313(2) Although this reading means that one standard—clear and convincing evidence—applies to whether a person should become a ward, but a different standard—preponderance of the evidence—applies to whether a particular person is suitable to be the ward's guardian, such a bifurcated system is found elsewhere in the EPIC. In the child-welfare context, for example, the Legislature similarly set forth a clear–and-convincing-evidence standard for the probate court's determination that a child should come within the protective custody of the court, MCL 712A.2; MCL 712A.19b(3), but then remained silent on the standard to use for best-interests determinations, MCL 712A.19b(5). This Court interpreted the omission of a standard in the latter context as intentional and applied the preponderance-of-the-evidence standard. See *In re Moss*, 301 Mich App 76, 90 and n 2; 836 NW2d 182 (2013). That our Court has previously understood the Legislature to have adopted bifurcated standards elsewhere in the EPIC lends further support to our conclusion here.

Applying this statutory analysis to the case at hand, before the probate court could remove Gary as Dorothy's guardian, it was required to find, by a preponderance of the evidence, that Gary was not qualified or able to provide for his mother's care, custody, and control.

---

[3] The former version of this statute, which is substantially the same as the current version, was codified at MCL 700.454(3).

Particularly relevant evidence on this question would include whether Gary did, in fact, satisfactorily provide for his mother's care, custody, and control in the past.

## F.  THE PROBATE COURT PROPERLY APPLIED
## THE PREPONDERANCE OF THE EVIDENCE STANDARD

Gary claims on appeal that the probate court applied the wrong standard to his removal. Gary points this Court to the following passage he claims indicates that the probate court erroneously used a discretionary standard:

> You know, I—it is interesting in this trial—you know, and the question is Gary Redd's suitability, and that's what we're—we're trying to figure out.  I have to decide that. . . .  And I don't know, Gary's—you say it's their burden of proof. Yeah, admittedly some evidence has to be presented by someone that Dorothy Redd's preference, you know, her person nominated is not suitable so logically it would come from them.

> But when we think of somebody having a burden of proof, we think of the standard of proof where it's—there's clear and convincing evidence with regard to the need for a guardian.  There isn't really a—a standard of proof stated for determining whether one's suitable.  It's a fact question, I guess, to be decided by the Judge, and then, a decision to appoint is an exercise of discretion by the Judge. So I have to find whether Gary Redd is suitable or not.

While the probate court mentioned the exercise of discretion in appointing a guardian, reading the probate court's comments as a whole, it is clear that the probate court understood that whether Gary was "suitable" was a question of fact that must be decided before the court could determine whether to honor Dorothy's stated preference.  Thus, on the question of suitability, the probate court did not apply a discretionary standard.  Rather, it correctly understood that the question was a factual one, requiring a factual finding based on record evidence.  The probate court further correctly placed the burden of proof on Nichole as the moving party.  Therefore, we find no fault with respect to the probate court's determination that suitability was a question of fact and that the moving party had the burden.

## G.  THE PROBATE COURT DID NOT
## CLEARLY ERR IN ITS FACTUAL FINDINGS

Gary also argues that the evidence did not support removing him as Dorothy's guardian and replacing him with Nichole.  While Gary takes issue with several of the probate court's specific factual findings, his arguments amount to an attack on the probate court's credibility determinations of the various witnesses who testified in this matter.  It is well-established, however, that we "will defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993).

This intra-family dispute has been highly contentious for years, and there was wide disagreement by various members about the best course of care for Dorothy.  Still, ten of the

seventeen testifying witnesses either directly testified or strongly implied that Gary was exerting undue influence over Dorothy and that Gary prevented Dorothy from maintaining relationships with several family members. Importantly, Gary's own daughter, Nichole, and Dorothy's co-guardian, Carney (a lawyer unrelated to any of the family members), testified that Gary was preventing Dorothy from seeing family members and exerting undue influence over her. These accounts were further supported by a police officer's testimony that Gary was not facilitating visitation with Dorothy's family members.

Part of a guardian's responsibility is to provide for the ward's social well-being. Nearly all witnesses agreed that Dorothy was very family-oriented and wished to have a relationship with her family members. The record amply supports that Gary was not willing to facilitate these relationships, and was, in fact, actively impeding them. Moreover, there was evidence presented that Nichole had long attempted to mend the family discord and had opened her home to all family members as a meeting place. Based on our review of this and the rest of the record evidence, we conclude that the probate court did not clearly err with respect to its factual findings and did not abuse its discretion by removing Gary as guardian and replacing him with Nichole under MCL 700.5310 and 700.5313.

## H.  REMAND TO A DIFFERENT JUDGE IS NOT WARRANTED

Finally, Gary argues that this case should be remanded to a different judge because the judge currently presiding over the matter is biased against Gary. We disagree.

"The general concern when deciding whether to remand to a different trial judge is whether the appearance of justice will be better served if another judge presides over the case." *Bayati v Bayati*, 264 Mich App 595, 602; 691 NW2d 812 (2004). This Court "may remand to a different judge if the original judge would have difficulty in putting aside previously expressed views or findings, if reassignment is advisable to preserve the appearance of justice, and if reassignment will not entail excessive waste or duplication." *Id*. at 602-603.

The bulk of Gary's arguments simply take issue with the fact that the probate court's factual findings and legal rulings were not in his favor. As explained above, we find no error with respect to the probate court's findings and rulings here. Moreover, "repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying." *Id*. at 603. The party seeking reassignment must demonstrate that the probate judge would be "unable to rule fairly on remand." *Id*. We conclude that Gary has failed to establish that the current probate judge would be unable to rule fairly on remand. Moreover, we find that reassignment would only "entail excess waste or duplication," *id*. at 602-603, given the probate court's familiarity with this lengthy and complicated dispute.

## III. CONCLUSION

Under the EPIC, a "suitable" guardian is one who is qualified and able to provide for the ward's care, custody, and control. When a preponderance of the evidence weighs against the suitability of the ward's current choice for guardian, the probate court must remove that person as guardian. We hold that the probate court did not clearly err in concluding that a preponderance of the evidence weighed against Gary's ongoing suitability as guardian.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael F. Gadola
/s/ Mark J. Cavanagh