*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GJMG, Minor.

UNPUBLISHED
September 19, 2024

No. 370414
Kalamazoo Probate Court
LC No. 2024-000101-GM

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Petitioner-appellant appeals as of right the probate court order denying petitioner's motion for special determinations on the issue of Special Immigrant Juvenile (SIJ) Classification for GJMG, the minor in this matter. We affirm.

## I. FACTS AND PROCEEDINGS

Petitioner asserted that he was the uncle of GJMG. GJMG was born in Guatemala, where his father would hit him with a belt when he misbehaved. When GJMG was approximately 15 years old, GJMG fled to the United States to live with petitioner. Petitioner had been taking care of GJMG for approximately two years. In January 2024, petitioner filed with the probate court a petition for his appointment as guardian of GJMG, asserting that GJMG was 17 years old, was a citizen of Guatemala, and was residing with petitioner, but that, absent petitioner being appointed GJMG's legal guardian, GJMG would be returned to Guatemala where he would be subjected to abuse. Petitioner asserted that GJMG's parents agreed with this guardianship.

Petitioner further requested that the probate court make special factual findings that would then allow petitioner to seek SIJ status for GJMG. Those requested special factual findings were: (1) that GJMG was born in Guatemala and was at the time of filing an unmarried minor under the age of 21; (2) a judicial acknowledgment that GJMG was under the custody of petitioner per an order of the probate court; (3) that reunification with GJMG's father was not viable because of abuse; and (4) it was not in GJMG's best interests to return to Guatemala.

The probate court held a hearing, at which GJMG testified, in pertinent part, as follows:

> *Q*: And how is your relationship with your mom?

-1-

*A*: With my mother, good.

*Q*: And how is your relationship with your dad?

*A*: So-so.

*Q*: And why do you say that?

*A*: Because sometimes we argue too much and sometimes he try [sic] to hit me with no reason.

*Q*: And how often did he try to hit you?

*A*: Sometimes because I made some mistake, but sometimes I don't where he wanted to hit me [sic]. I don't know if it was because of stress or something like that.

*Q*: And how often did that happen? Was it like every day or every week?

*A*: I will say like three times a week.

*Q*: And what else did he do to punish you?

*A*: Sometimes, how can I explain, he will tell me if I—if I did something wrong, he was going to stop talking to me or something like that.

*Q*: And why did you leave Guatemala?

*A*: Because—but when time went by, I felt like my relationship with my father was complicated and dangerous.

*Q*: And were there any other reasons why you left?

*A*: No.

\* \* \*

*Q*: And how would you feel if you had to return to your father's home in Guatemala?

*A*: I don't know. I'm afraid of if he—he could—it could be like before where I couldn't talk to him or the relationship would be too delicate.

*Q*: And if you had to return to Guatemala, is there anywhere else you could live that's not with your father?

*A*: No.

Petitioner offered no other proof of GJMG's allegations of abuse or neglect.

Petitioner was appointed as GJMG's full guardian until GJMG's eighteenth birthday. At that hearing, the probate court stated:

> With regard to the petition for special determinations, the Court clearly understands that [GJMG] is an unmarried minor under the age of 21, and that this Court has exercised its authority over him as a juvenile court as defined by 8 CFR 204.11(a).
>
> However, with the evidence that is currently before the Court, I cannot, in good conscience, exercise my discretion and say that the reunification is not viable when I consider the minor's age, the fact that he will soon meet majority, the—will soon be at the 18 of majority [sic].
>
> In looking at the appropriate statutes, MCL 722.622(g), 712A.19b, I also cannot say with the scant evidence that is before the Court that is not in his best interest to return to Guatemala, his country of nationality.
>
> The fact that he had a somewhat abusive father—and I do not doubt his word at what he has testified to—standing alone for an 18-year-old is not enough for this Court to make such an important finding and bind this Court and other courts in the future.
>
> So the Court will enter the order. And again, I have found the first two factors but not the last two factors on the motion for special determinate—special immigrant juvenile classification.
>
>               \*   \*   \*
>
> I'm not sure without additional witnesses or proofs that the Court would be convinced in any—based on the fact that he's turning 18 and doesn't have to return to his parents, I—I don't find how I could find on three or four.

The court then stated that it had considered "the best interest factors that are applicable for juvenile courts." The court then concluded, "With the availability of the evidence and what is before the Court, again, the Court reiterates that it cannot make the requested special findings on items 3 and 4 as requested, and that is—continues to be denied."

Petitioner moved for reconsideration, arguing that the probate court made a palpable error, the probate court's finding was not "based on the facts and evidence as presented at the date of the hearing," the probate court should not have considered GJMG's nearing eighteenth birthday, and the probate court should not have considered petitioner's undocumented immigration status. The probate court denied petitioner's motion, finding that petitioner merely presented matters that the probate court already ruled on and that petitioner failed at the hearing to satisfy, by a preponderance of the evidence, that GJMG suffered abuse from his father for the probate court to make such best-interest determinations. The probate court further stated that its decision was based on "the scant evidence presented, the credibility of which was questionable to this Court . . . ."

Following a subsequent hearing, the probate court discharged petitioner from his role as guardian because GJMG had turned 18 years old. The probate court then issued an order that

-3-

simply reiterated its finding that petitioner's motion for special determinations was denied and that petitioner's requests were denied again in response to petitioner's motion for reconsideration.

Petitioner now appeals.

## II. STANDARDS OF REVIEW

This Court reviews de novo "the interpretation and application of statutes and court rules." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). But this Court reviews "the probate court's findings of fact for clear error," and this Court "review[s] the probate court's dispositional rulings for an abuse of discretion." *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake was made." *In re ALZ*, 247 Mich App 264, 271–272; 636 NW2d 284 (2001). "A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes." *In re Redd Guardianship*, 321 Mich App at 403 (quotation marks and citation omitted). The trial court's standard of proof for predicate factual findings for SIJ status is the preponderance-of-the-evidence standard. *In re Velasquez*, 344 Mich App 118, 132-135; 998 NW2d 898 (2022).

## III. ANALYSIS

Petitioner argues that the probate court erred as a matter of law in numerous ways: by taking into consideration GJMG's nearing eighteenth birthday; by failing to find that reunification with GJMG's father was not viable; by failing to find that returning to Guatemala was not in GJMG's best interests; by failing to evaluate the matter at the time of the petition, rather than at a future speculative time; and by finding that GJMG's father abused him, but not finding that reunification was not viable. We disagree.

Petitioner's petition was brought pursuant to MCL 700.5204, and the probate court's compliance with that statute is not in dispute before this Court. Instead, petitioner's argument is regarding his additional request that the probate court make further factual findings sufficient for GJMG to be granted SIJ status under federal law.

"In short, 8 USC 1101(a)(27)(J) and 8 CFR 204.11([2022]) afford undocumented children, under the jurisdiction of a juvenile court, the ability to petition for special immigrant juvenile status in order to obtain lawful permanent residence in the United States." *In re LFOC*, 319 Mich App 476, 484; 901 NW2d 906 (2017) (quotation marks and citation omitted). "Although the juvenile court determines whether the evidence supports the findings, the final decision regarding SIJ status rests with the federal government, and, as shown, the child must apply to that authority." *Id*. at 485 (quotation marks and citation omitted).

When the statute employed to petition the probate court for a guardianship does not define "abuse" or "neglect"—which will then be used in making a SIJ-status determination—our courts review other state laws that define those terms. *In re Velasquez*, 344 Mich App at 135-136. As this Court has previously surveyed:

> As used in the Child Abuse and Neglect Prevention Act, MCL 722.601 et seq., MCL 722.602(1)(b) provides:

> "Child abuse" means harm or threatened harm to a child's health or welfare by a person responsible for the child's health or welfare, which harm occurs or is threatened through nonaccidental physical or mental injury; sexual abuse, which includes a violation of section 145c of the Michigan penal code, 1931 PA 328, MCL 750.145c.

As used in MCL 722.622(g) of Michigan's Child Protection Law, MCL 722.621 et seq., "child abuse" is defined as

> harm or threatened harm to a child's health or welfare that occurs through nonaccidental physical or mental injury, sexual abuse, sexual exploitation, or maltreatment, by a parent, a legal guardian, or any other person responsible for the child's health or welfare or by a teacher, a teacher's aide, or a member of the clergy.

Under the Child Abuse and Neglect Prevention Act, MCL 722.602(d)4 provides:

> "Neglect" means harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

Under MCL 722.622(k) of Michigan's Child Protection Law, "child neglect" is defined as

> harm or threatened harm to a child's health or welfare by a parent, legal guardian, or any other person responsible for the child's health or welfare that occurs through either of the following:

> (*i*) Negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or by the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care.

> (*ii*) Placing a child at an unreasonable risk to the child's health or welfare by failure of the parent, legal guardian, or other person responsible for the child's health or welfare to intervene to eliminate that risk when that person is able to do so and has, or should have, knowledge of the risk.

[*In re Velasquez*, 344 Mich App at 136-137 (citation omitted).]

"This Court has recognized that the juvenile court's special findings are limited to child welfare determinations and that the juvenile court is not to engage in an immigration analysis or decision[.]" *Id*. at 141 (quotation marks and citation omitted).

This Court in *In re Velasquez*, 344 Mich App at 139-140, held that the probate court erred by failing to find abuse and neglect for the purposes of making special factual findings for SIJ status. In that case the court wrote:

> LMV [the minor in *Velazquez*] provided unrefuted testimony that he was abused and neglected by his mother. LMV testified that his mother would beat him with a belt and branches, leaving marks on his body, when he was unable to work and that she hit him as a form of discipline. LMV testified that, instead of attending school, he was required to work when he was approximately eight years old. When he was 12 years old, he began working alone and was forced to work in dangerous conditions, including being exposed to chemical fertilizers and harvesting equipment. LMV also suffered work-related injuries. In one incident he was injured by a machete or ax and was unable to work for one week. His mother failed to provide medical treatment for these injuries. LMV also had "little" food and water while working and was frequently tired. LMV testified that he had very "little" food and water in Guatemala, which suggests that his mother may not have provided adequate food. LMV also testified that he felt "bad" when his mother beat him and that he would feel "bad" if he was forced to return to his mother in Guatemala. Moreover, the GAL emphasized that the evidence supported a finding that LMV had been abused and neglected by his mother. [*Id*. at 139.]

Petitioner asserts that the probate court treated GJMG as an adult when it was evaluating petitioner's request for special determinations; the record does not support this assertion. Petitioner also asserts that, by the probate court granting the guardianship, the court "made a finding that it would not be in [GJMG's] best interest to return to Guatemala". The probate court's rulings directly contradict this assertion.

The question is not whether the probate court erred as a matter of law in the ways that petitioner asserts but instead is whether there was sufficient evidence before the probate court to make the determinations that petitioner requested: specifically, whether GJMG's reunification with his father was viable, and whether it was in GJMG's best interests to return to Guatemala.

"[F]or purposes of SIJ-status findings, a court may apply the Child Custody Act factors, some combination of the Adoption Code and Child Custody Act factors, or a unique set of factors developed by the trial court . . . ." *Id*. at 145 (quotation marks and citation omitted). The probate court stated that it had considered the best-interest factors as applicable under the juvenile code. Although the court did not identify the statute by citation, the court then recited the factors as set forth in the Child Custody Act, MCL 722.23.

Unlike the petitioner in *In re Velasquez*, 344 Mich App at 139-140, petitioner presented limited evidence such that the trial court could not make the requested findings. Specifically, the probate court did not doubt GJMG's testimony about past abuse that his father inflicted upon him, but it declined to find that, two years later, reunification with his father was not viable or that returning to Guatemala was not in his best interests. Indeed, petitioner did not present at the hearing any evidence establishing either of these matters, one way or the other. The record does not indicate whether ongoing abuse was a possibility, or even that GJMG was afraid for his

physical safety should he be reunited with his father. GJMG testified that he was afraid that his relationship with his father would be "too delicate," and this was insufficient for the probate court to make the findings that petitioner requested.

Because of the very limited evidence that petitioner presented at the hearing before the probate court, we are not left with "a definite and firm conviction that a mistake was made" by the probate court. *In re ALZ*, 247 Mich App at 271-272. Therefore, the probate court's factual determinations cannot be said to amount to clear error. See *In re Redd Guardianship*, 321 Mich App at 403. Petitioner failed to meet the preponderance-of-the-evidence standard. Therefore, the probate court did not abuse its discretion by denying these portions of petitioner's motion. See *id*.

We affirm.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford