*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* HERBERT IRREVOCABLE FAMILY
TRUST.

---

DENNIS HERBERT and MARY LOU STEELE,

      Appellants,

v

MICHAEL H. HERBERT and KATHY M.
HERBERT, Trustees of the HERBERT
IRREVOCABLE FAMILY TRUST,

      Appellees.

UNPUBLISHED
April 30, 2025
10:17 AM

No. 367338
Allegan Probate Court
LC No. 22-063702-TV

---

Before: GARRETT, P.J., and RICK and MARIANI, JJ.

PER CURIAM.

Petitioners-appellants appeal by right the probate court's order denying their petition to enforce a written agreement entered into by the beneficiaries of the Herbert Family Irrevocable Trust (the trust) to distribute the proceeds from the sale of certain real property evenly amongst them. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Respondent-appellee, Michael Herbert (Michael),[1] and petitioners-appellants, Dennis Herbert (Dennis) and Mary Lou Steele (Mary Lou), are beneficiaries of the trust. Their mother, Gloria Herbert (Gloria), executed the trust in 2018 for the purpose of structuring her estate so that she could later become eligible for health-care and nursing-home coverage through Medicaid.

---

[1] Michael's spouse, Kathy Herbert, is also a respondent-appellee in this case. On April 27, 2022, during the events giving rise to this case, Michael resigned as sole trustee and appointed Kathy as successor trustee.

Gloria named Michael as the trust's sole trustee. As is particularly relevant here, Article III, Section C of the trust provided that "[a]ny real estate in Michigan that this trust owns at the time of my death shall be distributed to my son, [Michael]. If [Michael] shall predecease me, then the interest of said deceased child shall be distributed to his descendants, per capita at each generation." And Article III, Section D provided that "[t]he sum of thirty thousand dollars ($30,000) shall be distributed in equal shares to [Dennis] and [Mary Lou]." Gloria also executed a "ladybird deed," which conveyed her house on Old Allegan Road (the property) into the trust, while reserving a life estate in the property for herself. In 2019, Gloria entered a nursing home, where she remained until her death in July 2021.

After Gloria died, Michael believed that, as a result of the costs of her care, there were insufficient trust assets remaining to pay the $30,000 distribution to petitioners. On August 19, 2021, Michael, Dennis, and Mary Lou entered into an "Agreement for Alternate Distribution of Trust" (the agreement), under which Michael would receive an easement on the property, the property would be sold, and the three would evenly split the proceeds from the sale. The agreement stated, in relevant part:

> 2. The language contained in the Trust calls for distribution [of] particular assets to each of the beneficiaries of Gloria Faith Herbert. However, due to needs for her care and strategies required for Medicaid planning, most of her assets were dissipated with the unintentional result of largely disinheriting Dennis L. Herbert and Mary Lou Steele. The only remaining Trust assets in the property located on Old Allegan Road (the "Property") [sic].

> 3. The beneficiaries unanimously agree to a different distribution of the remaining parcel of property in order to bring about an even distribution of trust assets which remain after the expenses of trust administration.

> 4. It is our unanimous agreement and intention as beneficiaries of the [trust] that [Michael] be granted an easement for lake access but then the entirety of the Property be sold at the highest and best price and the proceeds split evenly.

> * * *

> 6. This instrument is intended to be a partial qualified disclaimer within the meaning of Section 2518(b) of the Internal Revenue Code of 1986, as amended, and pursuant to the provisions of the Uniform Disclaimer of Property Interests Act (MCLA 700.2901 *et seq.*).

A few months later, while compiling an inventory of Gloria's belongings, respondents discovered a safe containing $15,000 in cash. The cash increased the total trust assets to above $30,000, allowing for the cash distributions to petitioners as contemplated by the trust. But petitioners rejected respondents' request to abide by the trust as written. Respondents estimate that, if the property were sold and the proceeds divided pursuant to the agreement, Michael, Dennis, and Mary Lou would each receive over $410,000.

Petitioners filed a petition in the probate court to enforce the agreement as written. Alternatively, they argued that the agreement constituted a disclaimer by Michael of his interest in

the property, except for the easement, such that the other interests in the property should be distributed in equal shares to Michael, Dennis, and Mary Lou in accordance with the trust's provision for distribution of any residue.

Respondents took the position that the agreement was the product of the parties' mutual mistake regarding the amount of remaining trust assets and argued that the probate court was not permitted to modify the trust in accordance with the agreement because the modification would be contrary to the settlor's intent. Respondents argued that Michael did not disclaim his interest in the property and that, even if he had, the property would have passed to his children, not to petitioners.

The probate court denied the petition. The court found that the material purpose of the trust was to protect assets from end-of-life expenses and that it was Gloria's clear intent that Michael receive the property, while Dennis and Mary Lou receive monetary distributions. The court held that the agreement was invalid under MCL 700.7111 and MCL 700.7412 because the agreement was contrary to the settlor's intent, violated the material purpose of the trust, and was based on a mutual mistake of fact. The court additionally determined that Michael did not disclaim the property through the agreement because, under the agreement's terms, he would have retained a one-third interest in, and an easement upon, the property. Accordingly, the agreement was not a disclaimer, but an invalid attempt to modify the trust.

This appeal followed.

## II. STANDARD OF REVIEW

"The probate court's decisions are generally reviewed for an abuse of discretion." *In re Huntington Estate*, 339 Mich App 8, 17; 981 NW2d 72 (2021). "An abuse of discretion occurs when the probate court chooses an outcome outside the range of reasonable and principled outcomes." *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018) (quotation marks and citation omitted). "An error of law necessarily constitutes an abuse of discretion." *Huntington Estate*, 339 Mich App at 17 (quotation marks and citation omitted). "We review the probate court's findings of fact for clear error." *In re Redd Guardianship*, 321 Mich App 398, 403; 909 NW2d 289 (2017). "A probate court's finding is clearly erroneous when a reviewing court is left with a definite and firm conviction that a mistake has been made, even if there is evidence to support the finding." *Portus*, 325 Mich at 381 (quotation marks and citation omitted).

## III. MCL 700.7201

Petitioners argue that the probate court should have enforced the agreement and modified the trust because the court had jurisdiction under MCL 700.7201 to do so, and the court erred by focusing its analysis instead on whether the agreement was enforceable under MCL 700.7111 and MCL 700.7412. Although we agree that the probate court had subject-matter jurisdiction over the petition under MCL 700.7201, we disagree that the probate court erred by recognizing as much and then applying MCL 700.7111 and MCL 700.7412 to the merits of the petition.

To start, it bears noting that, on appeal, petitioners have not raised—and thus have abandoned—any argument that the probate court erred in its conclusions that the agreement was not enforceable as a nonjudicial settlement agreement under MCL 700.7111, or as a permissible

modification of the trust under MCL 700.7412. See, e.g., *Seifeddine v Jaber*, 327 Mich App 514, 520; 934 NW2d 64 (2019).[2] Instead, petitioners argue that, regardless of how the agreement may fare under those provisions, the probate court should have enforced the agreement under the authority granted by MCL 700.7201. That statute provides, in relevant part:

> (1) A court of this state may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested person or as provided by law.
>
> * * *
>
> (3) A proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and a determination regarding the validity, internal affairs, or settlement of a trust; the administration, distribution, modification, reformation, or termination of a trust; or the declaration of rights that involve a trust, trustee, or trust beneficiary, including, but not limited to, proceedings to do any of the following:
>
> * * *
>
> (h) Determine an action or proceeding that involves settlement of an irrevocable trust. [MCL 700.7201.]

As this provision makes clear, and as the parties do not dispute, the probate court in this case had jurisdiction to consider the instant petition and, with it, petitioners' claim that the agreement should be enforced. We see, however, no merit in petitioners' argument that "MCL 700.7111 and MCL 700.7412 should not have been used in deciding that the agreement was a modification and not permitted" because the court "had the authority to approve and enforce" the agreement under MCL 700.7201. It is well settled that, "[i]f a law specifies that a court has the power to adjudicate a class or category of cases and a case falls within that class or category, the court has subject-matter jurisdiction to hear the case, even if the facts of the case do not entitle the plaintiff to relief." *Mich Farm Bureau v Dep't of Environment, Great Lakes, and Energy*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 165166); slip op at 22. Here, MCL 700.7201 provides that the probate court had the authority to hear and decide petitioner's claim that the agreement was enforceable, but that did not, in itself, mean that the claim was meritorious or the agreement was enforceable; instead, MCL 700.7111 and MCL 700.7412 applied to that merits determination, making clear that the agreement was not enforceable by the probate court as a modification of the trust or as a nonjudicial settlement agreement. We see no tension or lack of clarity in this statutory interaction, nor any error in the probate court's understanding and application of it in this case.

---

[2] Petitioners have also abandoned any argument that the agreement could have been enforced under MCL 700.7411, which provides for the modification or termination of an irrevocable, noncharitable trust. Although petitioners nominally raised the issue, they expressly declined to brief it because, in their view, modification was proper under MCL 700.7201.

Moreover, although not challenged by petitioners on appeal, we see no error in the probate court's conclusion that the agreement was unenforceable under MCL 700.7111 and MCL 700.7412. MCL 700.7111 pertains to nonjudicial settlement agreements and provides, in relevant part, that such an agreement "shall not be used to accomplish the termination or modification of the trust" and is only valid "to the extent it does not violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under this article or other applicable law." MCL 700.7111(2). MCL 700.7412 pertains to the modification or termination of a trust and provides, in relevant part, that a court may only "modify the administrative or dispositive terms of a trust . . . if, because of circumstances not anticipated by the settlor, modification or termination will further the settlor's stated purpose or, if there is no stated purpose, the settlor's probable intention." MCL 700.7412(2).

The probate court correctly found that allowing for an even distribution of the proceeds from the sale of the property, as contemplated by the agreement, would modify, and violate a material purpose of, the trust. The stated purpose of the trust was to allow Gloria to eventually qualify for Medicaid coverage. As the probate court recognized, it is apparent that Gloria contemplated the depletion of her assets when setting up the trust and intended that, should those circumstances come to pass, Michael would nonetheless retain his interest as the sole recipient of the property. As discussed, the trust expressly provided that Michael alone would receive the property while petitioners would split a $30,000 monetary distribution. Nothing in the trust suggested that this arrangement was intended to create an equality of treatment amongst respondents and Michael—indeed, the parties do not dispute that the value of the property significantly exceeded $30,000—nor does anything suggest that the arrangement should be altered if Gloria's assets were to run dry. To the contrary, the trust provided that the sole interest in the property was to be distributed to Michael, without any condition or qualification as to whether other assets remained in the trust. Therefore, a modification of the trust to divide evenly the proceeds from the sale of the property would not further Gloria's purpose or intention and would violate a material purpose of the trust. We see no abuse of discretion in the probate court's conclusion that the agreement could not be enforced as a nonjudicial settlement agreement under MCL 700.7111 or a modification of the trust under MCL 700.7412.

IV. DISCLAIMER

Petitioners also argue that they are entitled to interests in the property because the agreement constituted a disclaimer by Michael of his interest in the property, and the probate court erred in its conclusion otherwise. We disagree.

The process for disclaiming an interest conveyed by a trust is governed by the Disclaimer of Property Interests Law, MCL 700.2901, *et seq*. A " '[d]isclaimable interest' includes, but is not limited to, property, the right to receive or control property, and a power of appointment." MCL 700.2901(2)(b). A disclaimable interest may be disclaimed "in whole or in part[.]" MCL 700.2902(1).

We agree with the probate court's conclusion that the agreement was not a disclaimer of Michael's interest but, rather, a failed attempt to modify the trust. MCL 700.2909(2) provides that "[a] disclaimer acts as a nonacceptance of the disclaimed interest, rather than a transfer of the disclaimed interest[,]" and "[t]he disclaimant is treated as never having received the disclaimed

interest." The arrangement set forth in the agreement does not align with the nature of a disclaimer. Under the agreement, Michael did not reject his interest in the property. Rather, he accepted his interest in the property and agreed to sell the property and share the proceeds, while still retaining an easement. Though Michael agreed not to retain the property under the terms of the agreement, we fail to see how this arrangement can be properly characterized as Michael "never having received the disclaimed interest." MCL 700.2909(2).

The terms of the agreement are also inconsistent with MCL 700.2910, which provides in relevant part:

> (1) The right to disclaim property is barred by any of the following events that occur after the event giving rise to the right to disclaim and before the disclaimer is perfected:
>
> (a) An assignment, conveyance, encumbrance, pledge, or transfer of the property, or a contract for such a transaction.
>
> *   *   *
>
> (c) An acceptance of the disclaimable interest or a benefit under the disclaimable interest after actual knowledge that a property right has been conferred.

The event giving rise to Michael's right to disclaim the property was Gloria's death. It was not until after that event that, under the terms of the agreement, Michael would be "granted an easement" for the property—and "then," sometime after that grant, "the entirety of the Property [would] be sold at the highest and best price and the proceeds split evenly." We fail to see, and petitioners have not explained, how their characterization of this arrangement as a disclaimer would comport with MCL 700.2910(1).

Petitioners do not address either of these provisions on appeal. Instead, petitioners argue that the agreement is a disclaimer because it satisfies the elements necessary for a valid disclaimer under MCL 700.2903(1), which provides:

> (1) A disclaimer is not valid unless it complies with all of the following:
>
> (a) Is in writing.
>
> (b) Declares the disclaimer.
>
> (c) Describes the disclaimed interest.
>
> (d) Is signed by the disclaimant.
>
> (e) Is delivered as provided in sections 2904, 2905, and 2906.

We agree with petitioners that the agreement appears to comply with these statutory requirements, and as the statute makes clear, a disclaimer cannot be valid unless there is such

compliance. But the statute does not suggest that its requirements are the only legal requirements or considerations that may bear on the validity or enforceability of a disclaimer; they are, by the statute's plain terms, necessary in that regard, but not necessarily sufficient in themselves. Accordingly, to the extent that the agreement—including its declaration that "it was intended to be a partial qualified disclaimer" —satisfied MCL 700.2903(1), that did not in itself mean that the agreement constituted a valid and enforceable disclaimer of Michael's interest in the property. And as discussed, petitioners do not address, and we do not see, how the agreement constituted such a disclaimer in light of MCL 700.2909(2) and MCL 700.2910(1).

The probate court did not err when it concluded that the agreement did not constitute a valid and enforceable disclaimer of Michael's interest in the property, but was instead a failed attempt to modify the terms of the trust.[3]

Affirmed.

/s/ Kristina Robinson Garrett
/s/ Michelle M. Rick
/s/ Philip P. Mariani

---

[3] Petitioners also argue that the probate court erred by finding that there existed alternate grounds to deny the petition because the agreement was based on a mutual mistake of fact and was therefore void. We need not address this argument because, even if the agreement was not based on mutual mistake, it was still invalid and unenforceable for the reasons discussed above.