*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of HIH.

---

GREAT LAKES GUARDIANSHIP SERVICES,
Guardian of HIH, a legally incapacitated individual,

        Appellee,

and

KIMBERLY BAKER and CARLOS HAMILTON,

        Petitioners-Appellees,

v

JERROLL SANDERS,

        Respondent-Appellant.

UNPUBLISHED
June 15, 2026
10:27 AM

No. 375229
Wayne Probate Court
LC No. 2024-894728-GA

---

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

Respondent appeals as of right the probate court's order granting petitioners' petition to appoint a guardian for HIH, an incapacitated individual, and appointing Great Lakes Guardianship Services as guardian of HIH. We affirm.

This case involves an intra-family dispute between respondent, the daughter of HIH and WH, and other family members, including petitioners. Petitioners[1] filed petitions requesting that the probate court appoint them as guardians for HIH and WH, who were married. Initially, WH

---

[1] We will refer to Kimberly and Carlos collectively as petitioners and Sanders as respondent. Kimberly is one of the daughters of HIH and WH, and Carlos is one of their grandchildren.

spoke for himself and HIH, but his physical condition was deteriorating rapidly, and he was in need of immediate care. WH passed away during the proceedings. Petitioners alleged that HIH lacked sufficient understanding or capacity to make informed decisions due to dementia. Petitioners also alleged that respondent, HIH's attorney-in-fact and patient advocate, was not acting in HIH's best interests. The relationship between respondent and several other family members was highly contentious. Many of the family members testified that respondent prevented family members from seeing HIH, that they required a police escort to visit HIH to prevent any altercations with respondent, and that respondent's actions worsened symptoms of HIH's dementia, such as her paranoia. Many family members also testified that respondent was not properly caring for HIH and was not transparent with HIH's finances. After hearing testimony on petitioners' request for a temporary guardian due to emergency circumstances of neglect, intimidation, exploitation, and inconsistent distribution of medication, the probate court found that an independent guardian should be appointed, rather than petitioners, to avoid further escalation of the intra-family dispute.

## I. NOTICE

Respondent argues that the probate court failed to establish jurisdiction over the proceedings because respondent, HIH, and other interested individuals were not provided with notice of the petition or the ongoing proceedings.

We use several standards when reviewing a probate court's decision:

> We review the probate court's dispositional rulings for an abuse of discretion. A probate court abuses its discretion when it chooses an outcome outside the range of reasonable and principled outcomes. We review the probate court's findings of fact for clear error. A factual finding is clearly erroneous when this Court is left with a definite and firm conviction that a mistake has been made. We review de novo any statutory or constitutional interpretation by the probate court. [*In re Guardianship of Redd*, 321 Mich App 398, 403-404; 909 NW2d 289 (2017) (quotation marks and citations omitted).]

"Article V, Part 3 of EPIC [Estates and Protected Individuals Code], MCL 700.5301 *et seq*., concerns the appointment of guardians for incapacitated individuals (wards)." *Id*. at 404. MCL 700.5303(1) provides that "[a]n individual in the individual's own behalf, or any person interested in the individual's welfare, may petition for a finding of incapacity and appointment of a guardian . . . ."

MCL 700.5311 provides for the notice of such a petition:

> (1) In a proceeding for the appointment or removal of an incapacitated individual's guardian, other than the appointment of a temporary guardian or temporary suspension of a guardian, or to designate a standby guardian or change the designated standby guardian, notice of hearing must be given to each of the following:

(a) The ward or the individual alleged to be incapacitated and that individual's spouse, parents, and adult children.

\* \* \*

(2) Notice must be served personally on the alleged incapacitated individual. Notice to all other persons must be given as prescribed by court rule. Waiver of notice by the individual alleged to be incapacitated is not effective unless the individual attends the hearing or a waiver of notice is confirmed in an interview with the visitor.

MCL 700.5312 provides the procedure for the appointment of a temporary guardian as follows:

(1) If an individual does not have a guardian, an emergency exists, and no other person appears to have authority to act in the circumstances, the court shall provide notice to the individual alleged to be incapacitated and shall hold a hearing. Upon a showing that the individual is an incapacitated individual, the court may exercise the power of a guardian, or appoint a temporary guardian with only the powers and for the period of time as ordered by the court. A hearing with notice as provided in section 5311 shall be held within 28 days after the court has acted under this subsection.

Petitioners filed a petition for the appointment of a guardian pursuant to MCL 700.5303(1), and also requested the appointment of a temporary guardian pending a decision on the petition because of an emergency situation caused by respondent's neglect. Respondent and HIH appeared at the June 6, 2024 hearing, and at the subsequent hearing in August 2024. MCL 700.5311(2), which requires personal service for the incapacitated individual, provides for a waiver of notice if the individual alleged to be incapacitated attends the hearing. By that statute respondent and HIH waived notice by appearing at the June 6, and August 22, 2024 hearings. Although HIH did not receive notice of the hearing for the appointment of a temporary guardian pursuant to MCL 700.5312, respondent does not appeal whether she and HIH were properly served regarding the appointment of a temporary guardian. Moreover, the order for temporary guardianship did not affect the trial court's final order appointing an independent guardian. Respondent has not established reversible error.

## II. APPOINTMENT OF A GUARDIAN

Respondent next argues that the probate court erred by finding that the appointment of an independent guardian was supported by clear and convincing evidence.

MCL 700.5306(1) provides in relevant part that:

The court may appoint a guardian if the court finds by clear and convincing evidence both that the individual for whom a guardian is sought is an incapacitated individual and that the appointment is necessary as a means of providing continuing

-3-

care and supervision of the incapacitated individual, with each finding supported separately on the record.[2]

After a court finds that these requirements have been met, EPIC provides a list of persons who may be appointed as guardians, which includes a person previously appointed as guardian, a person the incapacitated individual has chosen, a person who the incapacitated individual had already chosen as patient advocate or durable power of attorney, or a person appointed by a spouse or parent of an incapacitated individual by will or other writing. MCL 700.5313(2). If no other competent, suitable, or willing person is available to serve as guardian pursuant to MCL 700.5313(2), the court may appoint a professional guardian. MCL 700.5313(2)(b).

Respondent argues that the probate court erred by finding that HIH was an incapacitated individual because there was no medical evidence of incompetency, the guardian ad litem (GAL) did not complete an investigation and report, and the probate court relied on hearsay allegations and ignored that HIH had designated respondent as the power of attorney and patient advocate. The record does not support respondent's arguments.

Petitioners and other family members, including respondent, testified that HIH had been diagnosed with dementia and diabetes. For example, respondent administered HIH's medications every day, while one of HIH's granddaughters testified that HIH should not be left alone at night, explaining that HIH became nervous at night and wandered around the house. Kimberly's daughter testified that she had observed the severity of HIH's mental state and stated that HIH suffered from paranoia as a result of dementia and that respondent fed into HIH's paranoia. When the parties introduced themselves to the probate court at the beginning of each hearing, respondent spoke for HIH. HIH did not speak during any of the hearings.

Respondent appears to argue that the parties' testimonies were not credible and, therefore, were insufficient to support the probate court's finding that HIH was incapacitated. But we defer "to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Guardianship of Redd*, 321 Mich App at 412 (quotation marks and citation omitted). The proceedings were highly contentious, and respondent disagreed with most of the other family members about HIH's condition and her need for a guardian. However, the probate court did not find respondent to be credible. When the probate court found that HIH met the criteria of a legally incapacitated individual, it stated that it believed very little of respondent's testimony because it was "completely inconsistent" with the probate court's observations of the proceedings. The probate court listened to sworn testimony from family members and respondent and based its decision on the credibility of the witnesses. This Court will not disturb the trial court's findings of credibility.

---

[2] An " '[i]ncapacitated individual' means an individual who is impaired by reason of mental illness, mental deficiency, physical illness or disability . . . to the extent of lacking sufficient understanding or capacity to make or communicate informed decisions." MCL 700.1105(a).

Respondent also argues that the probate court failed to rely on medical reports or other documentary evidence. At the February 6, 2025 hearing, the probate court informed respondent and the other family members that the next hearing would be a continued evidentiary hearing and that they should submit any documentary evidence for its review. The probate court also informed the parties that if they did not submit any documentary evidence, it would base its decision on the weight and credibility of their testimony. Respondent and HIH did not attend the continued hearing, and there are no entries on the probate court's register of actions that any documentary evidence was filed with the court. Respondent attached medical records to her brief on appeal along with a screenshot of e-mails she sent to the probate court, but we were unable to locate these documents in the lower court record. Therefore, this Court cannot rely on them because doing so would allow an improper expansion of the record. MCR 7.210(A)(1); *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). In any event, respondent has not provided any evidence or support for her assertion that the probate court did not take this evidence into account if it did receive the information.

Additionally, evidence showed that respondent prevented additional evidence from being compiled because she was not cooperative with Dr. Nicole Huby and did not make HIH available for an independent medical examination. The probate court appointed Dr. Huby to conduct an independent evaluation of HIH and ordered that Dr. Huby be permitted to examine HIH's medical and psychiatric records. This evaluation would have provided documentary medical evidence of the level of HIH's dementia and whether she lacked "sufficient understanding or capacity to make or communicate informed decisions." MCL 700.1105(a). However, Dr. Huby was unable to connect with HIH after several attempts, and there was no evidence that HIH had her own telephone or that she was able to travel independently of respondent or WH. And during the hearing respondent spoke for HIH and informed the court that HIH was present at the hearings.

Finally, respondent argues that the trial court erred by failing to ensure that the GAL conducted a competent investigation and issued a report. In support of this argument, respondent cites MCL 700.5303(3), which provides:

> On the filing of a petition under subsection (1), the court shall set a date for hearing on the issue of incapacity. Unless the allegedly incapacitated individual has legal counsel of the individual's own choice, the court shall appoint a guardian ad litem to represent the individual in the proceeding.

MCL 700.5303(3) does not refer to a GAL investigation or a comprehensive GAL report. Respondent did not cite any other legal authority to support her argument. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *In re Warshefski*, 331 Mich App 83, 87; 951 NW2d 90 (2020).

The probate court did not err by listening to witness testimony to determine whether HIH was an incapacitated individual lacking in understanding or capacity to make informed decisions. The testimony supported the probate court's finding that HIH was an incapacitated individual and that the appointment of a guardian was necessary to provide continuing care and supervision of the incapacitated individual.

## III. EXISTING POWER OF ATTORNEY

Respondent also argues that the probate court erred by appointing a guardian for HIH because HIH had already expressed her preference for respondent by appointing respondent her attorney-in-fact and patient advocate.

MCL 700.5306(2) provides in relevant part that "[i]f the court is aware that an individual has executed a patient advocate designation under section 5506, the court shall not grant a guardian any of the same powers that are held by the patient advocate." MCL 700.5306(5) is an exception to MCL 700.5306(2), "allowing a court to grant powers to a guardian over treatment decisions that the patient advocate is designated to make if the patient advocate is not acting consistent with the ward's best interests . . . ." *In re Guardianship of CY*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370828); slip op at 5 (quotation marks and citation omitted; alteration in original). Therefore, a probate court "may appoint a different person to serve as the guardian for an incapacitated person who has made a patient advocate designation." *Id*. Additionally, MCL 700.5313(3) allows the probate court to appoint a guardian if the person chosen as a durable power of attorney or patient advocate is not "suitable or willing to serve[.]"

The probate court did not err by finding that respondent was not suitable to care for HIH. The testimony supported a finding that respondent interfered with HIH's relationships with her other children and grandchildren. There was no evidence HIH could move about from place to place without respondent or that HIH had her own phone to contact other family members. Respondent spoke for HIH at the hearings they attended. Respondent prevented Dr. Huby from following the probate court's order to conduct an independent examination of HIH. At the hearing in March 2025, several family members testified that they had not seen HIH since January 2025, although they had attempted to do so. The temporary guardian had not yet met HIH because respondent prevented the meeting. Respondent did not take HIH to attend WH's funeral. "Part of a guardian's responsibility is to provide for the ward's social well-being." *In re Guardianship of Redd*, 321 Mich App at 413. The evidence supported a finding that respondent was a disruptive figure in the family and isolated HIH from other family members following WH's death. The probate court's appointment of a guardian to replace respondent as patient advocate and attorney-in-fact was supported by clear and convincing evidence.

## IV. FAILURE TO FILE AN AMENDED PETITION

As her final argument, respondent argues that the trial court erred by allowing petitioners to change their request for their appointment as guardians to a request for an independent guardian without requiring petitioners to file an amended petition and provide notice of the amended petition.

Respondent failed to preserve this issue by raising it in the probate court. This Court reviews unpreserved issues in guardianship cases for plain error affecting substantial rights. *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 2-3. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *In re MJC*, 349 Mich App 42, 48; 27 NW3d 122 (2023) (quotation marks and citation omitted).

-6-

We also disagree with respondent's argument that the probate court erroneously allowed petitioners to amend the petition to request the appointment of an independent guardian. Petitioners did not change their request for their appointment as HIH's guardians. Rather, the probate court decided that it would appoint an independent guardian rather than a family member because of the acrimony between the various family members. Respondent relies on MCR 5.102 and MCR 5.113(B), but neither of these court rules require the filing of an amended petition. Respondent and HIH were present at the hearing when the probate court considered the long-term intra-family dispute and decided that an appointment of an independent guardian was needed in light of the increasing animosity among the family members. Respondent has failed to demonstrate a plain error.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel