*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Guardianship of NMR.

---

GUARDIAN INC-BC, also known as GUARDIAN
FINANCE & ADVOCACY SERVICES, Guardian
of NMR, a protected person, and ANIKA SETTLER,

        Appellees,

v

ANDREW MARSHALL CORT,

        Appellant.

UNPUBLISHED
March 12, 2026
9:22 AM

No. 375444
Calhoun Probate Court
LC No. 2024-001226-GA

---

*In re* Conservatorship of NMR.

---

GUARDIAN INC-BC, also known as GUARDIAN
FINANCE AND ADVOCACY SERVICES,
Conservator of NMR, a protected person, ANIKA
SETTLER, HEATHER TOWNSEND, and PAULA
HALE,

        Appellees,

v

ANDREW MARSHALL CORT,

        Appellant.

No. 375445
Calhoun Probate Court
LC No. 2025-000040-CA

---

Before: KOROBKIN, P.J., and YATES and FEENEY, JJ.

PER CURIAM.

-1-

In this consolidated appeal,[1] appellant, Andrew Marshall Cort, appeals as of right the trial court orders appointing appellee Guardian Finance & Advocacy Services (GFAS) as professional guardian and conservator for NMR, a 78-year-old woman diagnosed with moderate dementia. We affirm.

## I. FACTS

In 2014, Cort and NMR met on an online dating application, and Cort moved from California to Michigan to live with NMR. Over time, Cort and NMR's intimate relationship evolved into what one could consider a business arrangement. In 2015, Cort experienced medical issues, and NMR stopped charging him rent. A year later, NMR also stopped charging Cort his share of the utilities. In 2018, Cort became involved in NMR's finances by helping her set up automatic payments for the majority of her bills. At about that time, NMR began to have memory issues. In 2022, NMR: (1) took out a reverse mortgage on her home to purchase a lift chair and pay her home insurance and property taxes, and (2) executed a life estate deed giving her home to Cort upon her death.

In March 2024, NMR was diagnosed with moderate dementia, causing confusion as well as a loss of short-term memory and insight. In August 2024, Calhoun County Adult Protective Services (APS) received allegations of financial exploitation, self-neglect, and exploitation of a person regarding NMR. In response to these allegations, Cort claimed that he had an arrangement with NMR in which he lived in her home rent free while helping her with daily living and bill paying. Cort also explained that although he informed NMR of the advantages and disadvantages of a reverse mortgage, it was NMR's decision to: (1) take out a reverse mortgage on her home, and (2) make Cort a beneficiary under the deed.

In January 2025, APS and Cort filed competing petitions for an appointment of a guardian and conservator for NMR. Both petitions alleged that NMR had a mental deficiency, lacked the capacity to make informed decisions, and was unable to manage her property and business affairs effectively. Before any hearings on the matter, the probate court appointed a guardian ad litem (GAL). The GAL visited NMR at her home and reported that NMR was very confused and not oriented in time and place. Despite explaining the petition several times, the GAL did not believe that NMR understood the nature of the petition. When speaking with NMR, the GAL noticed that Cort attempted to interrupt and lead the conversation. Accordingly, the GAL reported that NMR "could absolutely be subjected to financial exploitation and did not appear to have [the] capacity to make and communicate informed decisions about her person." Similar reports followed throughout the proceedings.

The probate court held two hearings on the matter. It heard testimony from Cort, NMR's niece, two APS representatives, and a social worker from the Program of All-Inclusive Care for the Elderly. At the conclusion of the first hearing, the probate court appointed GFAS as temporary guardian and special conservator of NMR. The probate court noted that Cort's suitability to serve as a special conservator in this case was "very questionable" because he was "essentially, living

---

[1] *In re Guardianship of NMR*, unpublished order of the Court of Appeals, entered May 27, 2025 (Docket Nos. 375444; 375445).

off of [NMR]," creating a conflict of interest. At the conclusion of the second hearing, the probate court appointed GFAS as professional guardian and conservator. The probate court again explained why Cort was unsuitable to be NMR's guardian or conservator, describing him as "extraordinarily domineering" with a "self-serving nature" and misleading pleadings. Cort now appeals.

## II. PROFESSIONAL GUARDIAN AND CONSERVATOR

On appeal, Cort, proceeding in *propria persona*, requests that this Court immediately remove GFAS as NMR's professional guardian and conservator. Cort specifically argues that GFAS and its representatives breached their statutory and fiduciary duties by: (1) imposing unreasonable and excessive fees; (2) failing to report suspected abuse, neglect, or financial exploitation; (3) failing to investigate less-restrictive alternatives to moving NMR into a memory care facility; and (4) recommending that NMR be moved to a memory care facility without an individualized assessment and meaningful consultation with Cort and NMR. We disagree.

## A. PRESERVATION AND STANDARD OF REVIEW

Generally, to preserve an issue for appellate review, the respondent must raise the issue before the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). In this case, Cort argued that he should be appointed conservator and focused much of his argument on establishing that he did not financially exploit NMR; however, Cort did not: (1) object to GFAS being appointed as guardian and conservator, or (2) argue that GFAS breached its statutory and fiduciary duties. Therefore, these issues were not preserved. See *id*. We review unpreserved issues in guardianship cases for plain error affecting substantial rights. *In re Guardianship of AMMB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368915); slip op at 2-3.

> To show that a plain error occurred warranting reversal, the following four elements must be established on appeal: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once an appellant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id*. at ___; slip op at 3 (quotation marks, citation, and alteration omitted).]

## B. GFAS'S APPOINTMENT AS GUARDIAN AND CONSERVATOR

Despite directly appealing the probate court's orders appointing GFAS as NMR's guardian and conservator, Cort does not argue that the probate court erred by appointing GFAS or by finding that the standards for appointment of a professional guardian and conservator had been met. Nevertheless, because the underlying appointment is at the heart of Cort's appeal, we must address it first. We conclude that the probate court did not plainly err by appointing GFAS as NMR's guardian and conservator.

The Estates and Protected Individuals Code (EPIC), MCL 700.1101 *et seq*., sets forth the standards governing guardianship and conservatorship appointments for incapacitated individuals. With regard to guardianship appointments:

> The court may appoint a guardian if the court finds by clear and convincing evidence both that the individual for whom a guardian is sought is an incapacitated individual and that the appointment is necessary as a means of providing continuing care and supervision of the incapacitated individual, with each finding supported separately on the record. [MCL 700.5306(1).]

With regard to conservatorship appointments:

> (3) The court may appoint a conservator or make another protective order in relation to an individual's estate and affairs if the court determines both of the following:
>
> (a) The individual is unable to manage property and business affairs effectively for reasons such as mental illness, mental deficiency, physical illness or disability, chronic use of drugs, chronic intoxication, confinement, detention by a foreign power, or disappearance.
>
> (b) The individual has property that will be wasted or dissipated unless proper management is provided, or money is needed for the individual's support, care, and welfare or for those entitled to the individual's support, and that protection is necessary to obtain or provide money. [MCL 700.5401(3).]

Assuming these standards have been satisfied, EPIC provides a prioritized list of persons who may be appointed as guardians and as conservators under MCL 700.5313(2) and MCL 700.5409(1) respectively. Relevant here, if none of the statutorily identified persons are "suitable and willing to serve," then a professional guardian or conservator may be appointed. See MCL 700.5106(2); MCL 700.5409(1); MCL 700.5313(4). Under MCL 700.5106(2), the court shall only appoint a professional guardian or conservator if it finds that: (1) the appointment is in the incapacitated individual's best interests, and (2) there is no other person who is competent, suitable, and willing to serve in that fiduciary capacity.

The record reflects considerable evidence that NMR was an incapacitated individual and that a guardian was necessary to provide for her care and supervision. See MCL 700.5306(1). NMR's diagnosis of moderate dementia caused short-term memory loss and a lack of judgment that affected her capacity to make informed decisions about her daily life, medical care, and financial decisions. Throughout the proceedings, individuals who met with NMR stated that she was not oriented in time or place, was confused, and did not appear to understand the petition. Although paying for her own care, NMR relied heavily on Cort to make up for her memory issues and inability to do daily tasks. Indeed, Cort suggested that NMR's lack of capacity was not really at issue, asserting that NMR had become like "a child" and could not carry on a conversation. Accordingly, the probate court did not err by appointing a guardian in this case. See MCL 700.5306(1).

Similarly, the record reflects that NMR's mental deficiencies made her unable to manage her property and business affairs and that her assets would be wasted without proper management. See MCL 700.5401(3). When NMR was asked about her finances, she could not provide details. She incorrectly believed that she had lived in her home for only five years and simply stated that she banked in "a building" downtown. NMR relied on Cort to ensure that her bills were paid and directed representatives of APS to appellant for answers about her finances and other matters. Several witnesses expressed concern that Cort was financially exploiting NMR. In the past few years, NMR had: (1) taken out a reverse mortgage on her home with Cort's advice, and (2) deeded her home to Cort upon her death. Although NMR could not confirm whether an agreement existed, Cort claimed that he had an agreement with NMR that he could live in her home for free in exchange for caring for her. Putting aside whether any wrongdoing had occurred, as the probate court did, at the very least it was established that NMR was not capable of managing her affairs and that her assets would be wasted without proper management. Notably, Cort seemed to agree that a conservatorship appointment was warranted as he also petitioned to be appointed as conservator. Therefore, the probate court did not err by appointing a conservator in this case. See MCL 700.5401(3).

The probate court properly followed the procedures set forth in EPIC and did not plainly err by appointing GFAS as NMR's professional guardian and conservator. The probate court made a clear record supporting its decision to appoint a professional guardian and conservator after finding that there were no family members or other suitable persons willing to take on the roles. See MCL 700.5106(2); MCL 700.5409(1); MCL 700.5313(4). The probate court considered two professional organizations in its decision—GFAS and Currency Providers—but ultimately found that GFAS was the appropriate choice as it had the resources, experience, and ability to address all NMR's needs and investigate her finances. The probate court also extensively explained why Cort was unsuitable to be NMR's guardian or conservator, reasoning that Cort was "extraordinarily domineering" with a "self-serving nature" and misleading pleadings.[2] The probate court explained that Cort had a financial interest in NMR's care because as long as NMR remained in her home, and Cort had some level of control over her care, he could continue living there for free. We "defer to the probate court on matters of credibility, and will give broad deference to findings made by the probate court because of its unique vantage point regarding witnesses, their testimony, and other influencing factors not readily available to the reviewing court." *In re Guardianship of Redd*, 321 Mich App 398, 412; 909 NW2d 289 (2017) (quotation marks and citation omitted).

Accordingly, the probate court did not plainly err by appointing GFAS as NMR's professional guardian and conservator. See *In re Guardianship of AMMB*, ___ Mich App at ___; slip op at 2-3.

## C. GFAS'S PERFORMANCE AS GUARDIAN AND CONSERVATOR

On appeal, Cort requests that this Court immediately remove GFAS as NMR's professional guardian and conservator because GFAS and its representatives breached their fiduciary duties and

---

[2] The probate court found that many of appellant's pleadings were "misleading," either unintentionally because of the use of artificial intelligence in their drafting or intentionally because appellant stated that the cases stood for propositions for which they did not.

violated several statutory requirements. We disagree. Cort largely misstates the law, and the record does not support his claims.

As an initial matter, the probate court has exclusive jurisdiction over most of the relief that Cort seeks on appeal. See MCL 600.841(1)(a); MCL 700 1302(c) and (d). Specifically, any person seeking the replacement of a guardian or conservator should file a petition in the appointing court, see MCL 700.5415(1)(d) and MCL 700.5310(2), which Cort did not do in this case. Admittedly, Cort was blocked from making such a petition in the probate court at the time that he filed leave to appeal because when making its findings, the probate court stated that it would not consider any petitions to modify or terminate its guardianship and conservatorship decisions for a period of at least six months unless the petition was submitted by APS, GFAS, or NMR's GAL. Nonetheless, we briefly address Cort's arguments and their lack of persuasiveness.

Cort first argues that GFAS violated MCL 700.5314 and MCL 700.1308 by: (1) "failing to investigate, disclose, and present to the court a suitable, less restrictive, and cost-effective fiduciary alternative"; (2) "imposing unreasonable and excessive fees"; and (3) "exposing themselves to judicial remedies for violation of duty[.]" MCL 700.5314 outlines the powers and duties of a guardian, and MCL 700.1308 sets forth possible remedies for a breach of fiduciary duty. But neither MCL 700.5314 nor MCL 700.1308 imposes a requirement on fiduciaries to investigate and present alternatives to the court, and neither statute addresses compensation for fiduciaries. The statutes applicable to compensation are MCL 700.5216 and MCL 700.5413, which provide that fiduciaries are entitled to "reasonable compensation" for their services. Whether a fiduciary's requested compensation is reasonable is within the probate court's discretion. Cf. *In re Jamnik*, 176 Mich App 827, 831-832; 440 NW2d 112 (1989) (discussing the reasonableness of attorney fees and stating that "the determination of what is reasonable compensation for such services is left to the sound discretion of the trial court . . ."), aff'd 434 Mich 883 (1990). The record does not support a finding that GFAS's fees were unreasonable in this case.[3] Accordingly, we find this argument unpersuasive.

Cort further argues that GFAS and its representatives violated MCL 400.11a, MCL 700.5314, and MCL 700.5318 by failing to report suspected abuse, neglect, or financial exploitation. As an initial matter: (1) MCL 700.5318 is entirely inapplicable to this issue as it involves third persons dealing with a guardian or assisting a guardian in conducting a transaction, and (2) although MCL 700.5314 requires guardians to act in their ward's best interests, Cort has not explained how that statute imposes this particular duty. MCL 400.11a is the mandated

---

[3] In support of his argument that GFAS's fees were unreasonable and excessive, Cort draws attention to the "Plan of Action" that he submitted to the probate court, which proposed Currency Providers as NMR's guardian and Cort as NMR's conservator. Within this plan, Cort proposed a list of caregiving services that NMR would need along with a proposed cost for those services. Cort did not explain how those cost values were discerned, and there was no indication that any party was willing to carry out such services at that compensation rate. Moreover, as previously discussed, the probate court did not plainly err by appointing GFAS—opposed to Currency providers or Cort—as NMR's professional guardian and conservator. We therefore find Cort's reference to this document unpersuasive.

-6-

reporting provision of the Social Welfare Act, MCL 400.1a *et seq*., but the record does not establish that GFAS failed to report suspected abuse or had "reasonable cause to believe" that NMR had been abused, neglected, or exploited. Further, Cort ignores the critical fact that an APS investigation into suspected financial exploitation was already ongoing when these proceedings began. Accordingly, we find this argument unpersuasive.

Finally, Cort argues that GFAS violated MCL 700.5306(2), MCL 700.5306a, MCL 700.5310, and MCL 700.5314 by: (1) failing to investigate "less restrictive alternatives to institutionalization"; and (2) "recommending and preparing to implement immediate institutionalization" before conducting an individualized assessment of NMR, reviewing NMR's medical records, consulting with medical professionals, or meaningfully communicating with NMR and Cort. As an initial matter: (1) MCL 700.5306(2) and MCL 700.5306a are inapplicable as they simply address guardians' rights and the requirement that the court grant a guardian only those powers necessary to provide for the needs of the incapacitated individual, and (2) MCL 700.5310 is inapplicable as it addresses the resignation or removal of a guardian. Neither MCL 700.5306(2), MCL 700.5306a, nor MCL 700.5310 sets forth any requirements that a guardian must comply with before placing a ward into a memory-care facility. Although MCL 700.5314 is somewhat applicable, it also does not contain requirements to conduct an individualized assessment or mandated consultation with medical professionals; rather, it generally gives the guardian power to make decisions on the ward's place of residence, MCL 700.5314(a), and to consent to medical treatment, MCL 700.5314(c). The statute certainly does not impose a requirement that before making placement decisions, a legal guardian, such as GFAS, must consult with a friend or purported live-in caregiver, such as Cort. Cort does properly identify one requirement; "[i]f meaningful communication is possible," a guardian must consult with the incapacitated individual before making major decisions. MCL 700.5314. Nonetheless, the record reflects that meaningful communication with NMR was not possible. NMR suffered from moderate dementia and short-term memory loss, and Cort testified that NMR was like "a child" who needed supervision and could not carry on a conversation about any topic. Moreover, the record does not reflect what facility NMR now resides in or why GFAS made that decision. Accordingly, we find this argument unpersuasive.

## III. CONCLUSION

The probate court did not plainly err by appointing GFAS as NMR's professional guardian and conservator. Cort misstates the law in several respects and fails to establish that GFAS violated any statutes or fiduciary duties. Affirmed.

/s/ Daniel S. Korobkin
/s/ Christopher P. Yates
/s/ Kathleen A. Feeney